## McLEOD v. LLOYD.

[71 Pac. 795, 74 Pac. 491.]

PLEADING — REFERENCE TO EXHIBITS.

1. An allegation in a pleading that the pleader is the owner of certain real property, "as is shown by the abstract of title hereto attached and made part hereof," an abstract being actually fastened to the pleading and identified, is not a reference to the abstract, but amounts to a plea that the title was derived from and through the persons named therein.

PRESUMPTION AS TO SEALS ON DEEDS.

2. Under B. & C. Comp. § 5333, enacting that a conveyance of an interest in land may be made by "deed, signed and sealed" by the grantor, conveyances referred to in an abstract of title as "deeds" are presumed to have been sealed as required by statute.

PATENTS — PRESUMPTION OF PERFORMANCE OF OFFICIAL DUTY.

3. Under B. & C. Comp. § 788, subd. 15, creating a presumption that official duty has been regularly performed, it will be assumed that a patent referred to as having been recorded in the county deed records was executed by the government officials with all the formalities required by law: as, for example, B. & C. Comp. § 788, subd. 15, enacts that it is to be presumed that official duty has been regularly performed, and Rev. Stat. U. S. § 458 (U. S. Comp. St. 1901, p. 259), enacts that all patents issuing from the General Land Office shall be issued in the name of the United States, signed by the President and countersigned by the Recorder of the General Land Office. *Held,* that where an abstract of title shows a patent, though it does not show it countersigned by the Recorder, it will be presumed that it was so countersigned.

SUIT TO REMOVE A CLOUD — PLEADING IMPERFECTIONS.

4. In a suit to remove a cloud an allegation that defendant claims some interest or right of title to the specified property, as shown by an abstract of title attached to the complaint, is a sufficient specification of the particular record constituting the cloud and of the infirmity rendering it void, where the abstract shows that the deeds to defendant were executed by plaintiff's grantor after plaintiff's deeds had been regularly executed and recorded.

REMOVING CLOUD — ALLEGING OWNERSHIP — REMEDY AT LAW.

5. In a suit to remove a cloud from title an allegation that the property was "unseated, unimproved, and unoccupied" is a sufficient statement that defendant was neither in possession nor acting as the owner thereof, within the meaning of B. & C. Comp. § 326.

REMOVING CLOUD — CONSTITUTIONAL RIGHT TO JURY TRIAL.*

6. Section 516, B. & C. Comp., giving to any person claiming an interest in realty not in the possession of another a right to sue in equity to determine the respective claims, does not violate Const. Or. Art. I, § 17, preserving the right of trial by jury in civil cases, for this is only the right as it existed at common law, which applied solely to cases where the defendant had possession.

FRAUDULENT CONVEYANCES — BURDEN OF PROOF.

7. In cases to remove a cloud from title where it is claimed that one of the parties holds under fraudulent deeds, the burden of proof is on the party claiming the fraud to both allege and prove it, even though his title is based on deeds that are *prima facie* voluntary.

REMOVING CLOUD — FRAUD, ACCIDENT OR MISTAKE — EQUITY.

8. In a suit to remove a cloud, where plaintiff claims under a quitclaim deed from persons never in possession, and defendant claims under a warranty deed for full value from the same grantor, equity has jurisdiction to determine the conflicting rights without any other basis than the opposition of the respective claims.

QUITCLAIM DEED AS BASIS OF TITLE.

9. The fact that the plaintiff secured a quitclaim deed immediately before instituting a suit to quiet title does not effect his right to maintain the suit.

REAL PARTY IN INTEREST — SUIT BY AGENT.

10. The holder of the legal title to real property may maintain a suit to remove a cloud from the title, though he holds in trust for an undisclosed principal, since such an agent may sue in his own name.

---

*NOTE.—As to the right of trial by jury preserved by Const. Or. Art. I, § 17, see *Tribou* v. *Strowbridge,* 7 Or. 156; *McDonald* v. *American Mort. Co.* 17 Or. 626; *Fleischner* v. *Citizens' Invest. Co.* 25 Or. 119; *Raymond* v. *Flavel,* 27 Or. 219; *Trummer* v. *Konrad,* 32 Or. 54; *Mitchell* v. *Oregon Flax Assoc.* 38 Or. 503; *Salem Traction Co.* v. *Anson,* 41 Or. 562.— REPORTER.

PRIORITY OF RECORDED CONVEYANCES.

11. Under B. & C. Comp. § 5359, providing that every conveyance of real property not recorded in five days shall be void as against subsequent purchasers in good faith whose conveyance shall be first duly recorded, where neither of two conveyances is recorded within the time limited, the one first recorded takes precedence over the other.

PRACTICE IN SUPREME COURT—AFFIRMANCE OF DECREE ON DEMURRER.

12. Where a final decree has been entered on the decision of a demurrer to a complaint, and such final order is affirmed, it is discretionary with the supreme court to enter a final decree or to remand the case for such further proceedings as the trial court may deem proper.

AMENDING PLEADINGS AFTER CAUSE HAS BEEN REMANDED.

13. When an equity cause has been remanded to the trial court after affirmance of a decree entered upon the decision of a demurrer to a complaint, it devolves upon such lower court to determine whether the defeated party may plead further.

From Lane : JAMES W. HAMILTON, Judge.

This is a suit by G. B. McLeod against Clyde D. Lloyd to remove an alleged cloud upon the title to real property. It is averred in the complaint, in substance, that plaintiff is the absolute and unqualified owner of the southwest quarter, section 12, northeast quarter, the east half southeast quarter, the southeast quarter northwest quarter, and the northwest quarter southeast quarter, section 14, township 24 south, range 1 east of the Willamette Meridian, containing 480 acres, more or less, "as is shown by the abstract of title hereto attached, marked Exhibit A and made a part hereof;" "that said lands are all unseated, unimproved, and unoccupied, and not in the actual possession of any person ;" that defendant claims some interest, right of title thereto, which claim is unfounded, illegal, unjust, and contrary to law and to equity, "as is shown by the said Exhibit A ; but that the pretended deeds noted and set out at Nos. 3, 7, and 10 of said Exhibit A, and the said claim of defendant, have created and constitute a cloud upon plaintiff's title to said lands, although null and void both in law and equity ; and that defendant refuses to relinquish such claim, though requested so to do ;" "that plaintiff has no plain, speedy, adequate, or any remedy at law." The complaint is verified by plaintiff's

attorney, and his affidavit, in addition to the statutory requirement, is to the effect that he had personally examined the records of Lane County, and compared therewith the abstract of title attached to the complaint, and that said abridgment is a true, full, correct, and complete abstract of title to all of said lands. The abstract of title, or Exhibit A, omitting therefrom the reservations in the United States patents of vested and accrued water rights, etc., is as follows :

"Exhibit A.

Abstract of title to the following described real estate, situate in Lane County, Oregon :

The southwest quarter of section No. 12, the northeast quarter, the east half of the southeast quarter, the northwest quarter of the southeast quarter, and southeast quarter of northwest quarter of section No. 14, township No. 24 south, range 1 east of Willamette Meridian, containing 480 acres.

No. 1.    Patent.

| | |
|---|---|
| *Grantor* — The United States, by T. Roosevelt, President. F. M. McKean, Secretary. *Grantee* — William H. Watkins. | Consideration, homestead. Date, November 29, 1901. Recorded February 10, 1902. Book 52, page 76. |

*Description* — Southwest quarter of section 12, in township 24 south of range 1 east of Willamette Meridian, in Oregon, containing 160 acres.

No. 2.    Warranty Deed.

| | |
|---|---|
| *Grantor* — William H. Watkins (unmarried). *Grantee* — Mrs. Emma L. Watson. | Consideration, $1.00. Date, July 31, 1901. Recorded September 21, 1901. Book 39, page 355. |

*Description* — Southwest one fourth of section twelve (12), in township twenty-four (24) south, range one (1) east, Willamette Meridian, containing 160 acres.

Witnesses: S. A. D. Puter and John Ford.

Acknowledged July 31, 1901, before S. A. D. Puter, Notary Public in and for Lane County, State of Oregon.

### No. 3. Warranty Deed.

| | |
|---|---|
| *Grantor*—William H. Watkins (unmarried). | Consideration, $640.00. Date, August 17, 1901. Recorded November 16, 1901. |
| *Grantee*—Clyde D. Lloyd. | Book 39, page 368. |

*Description*—The southwest quarter (S.W. ¼) of section twelve (12), township twenty-four (24) south, range 1 east, containing 160 acres, situated in the County of Lane, and State of Oregon.

Witnesses : H. G. McKinley and B. M. Jones.

Acknowledged August 20, 1901, before H. G. McKinley, Notary Public in and for Lane County, State of Oregon.

### No. 4. Warranty Deed.

| | |
|---|---|
| *Grantor*—William B. Abbott (unmarried). | Consideration, $1.00. Date, July 27, 1901. Recorded September 21, 1901. |
| *Grantee*—Emma L. Watson. | Book 39, page 354. |

*Description*—Southwest one fourth of section twelve (12), township twenty-four (24) south, range 1 east, Willamette Meridian, containing 160 acres.

Witnesses : S. A. D. Puter and Robert Simpson.

Acknowled July 27, 1901, before S. A. D. Puter, Notary Public in and for Lane County, State of Oregon.

### No. 5. Patent.

| | |
|---|---|
| *Grantor* — The United States, by T. Roosevelt, President. F. M. McKean, Secretary. | Consideration, homestead. Date, November 20, 1901. Recorded February 10, 1902. |
| *Grantee* — Samuel L. Carson. | Book 52, page 77. |

*Description* — East half of the northeast quarter, and the east half of the southeast quarter of section 14, in township 24 south, of range 1 east of the Willamette Meridian, in Oregon, containing 160 acres.

### No. 6. Warranty Deed.

| | |
|---|---|
| *Grantor* -- Samuel L. Carson (unmarried). | Consideration, $1.00. Date, August 3, 1901. Recorded September 21, 1901. |
| *Grantee* — Emma L. Watson. | Book 39, page 351. |

*Description* — East one half of northeast one fourth, east one half of southeast one fourth of section 14, township twenty-four (24) south, range one (1) east, Willamette Meridian, containing 160 acres.

Witnesses: Wm. B. Abbott and Robert Simpson.

Acknowledged August 3, 1901, before S. A. D. Puter, Notary Public in and for Lane County, State of Oregon.

### No. 7.  Warranty Deed.

| | |
|---|---|
| *Grantor* — Samuel L. Carson. | Consideration, $640.00. |
| | Date, August 17, 1901. |
| | Recorded November 16, 1901. |
| *Grantee*—Clyde D. Lloyd. | Book 39, page 369. |

*Description* — The east one half ($\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$), and the east one half ($\frac{1}{2}$) of the southeast quarter ($\frac{1}{4}$) of section fourteen (14), in township twenty-four (24) south, range one (1) east, containing 160 acres, situated in the County of Lane, and State of Oregon.

Witnesses: · H. G. McKinley and G. M. Caviness.

Acknowledged August 20, 1901, before H. G. McKinley, Notary Public in and for Lane County, State of Oregon.

### No. 8.  Patent.

| | |
|---|---|
| *Grantor* — United States, by | Consideration, homestead. |
| T. Roosevelt, President. | Date, November 20, 1901. |
| F. M. McKean, Secretary. | Recorded February 10, 1902. |
| *Grantee*-- James E. Warwick. | Book 52, page 78. |

*Description* —West half of the northeast quarter, the southeast quarter of the northwest quarter, and the northwest quarter of the southeast quarter of section 14, in township 24 south, of range 1 east of Willamette Meridian, in Oregon, containing 160 acres.

### No. 9.  Warranty Deed.

| | |
|---|---|
| *Grantor* — James E. Warwick | Consideration, $1.00. |
| (unmarried). | Date, July 31, 1901. |
| | Recorded September 21, 1901. |
| *Grantee*— Mrs. Emma L. Watson. | Book 39, page 353. |

*Description* —West one half of northeast one fourth, southeast one fourth of northwest one fourth, northwest one fourth of southeast one fourth of section 14, township 24 south, range 1 east, Willamette Meridian, containing 160 acres.

Witnesses— S. A. D. Puter and John Ford.

Acknowledged July 31, 1901, before S. A. D. Puter, Notary Public in and for Lane County, State of Oregon.

### No. 10.  Warranty Deed.

| | |
|---|---|
| *Grantor* — James E. Warwick. | Consideration, $640.00. |
| | Date, August 17, 1901. |
| | Recorded November 16, 1901. |
| *Grantee* — Clyde D. Lloyd. | Book 39, page 370. |

*Description* —The west one half ($\frac{1}{2}$) of the northeast one quarter ($\frac{1}{4}$), and the southeast quarter ($\frac{1}{4}$) of the northwest quarter ($\frac{1}{4}$), and the northwest quarter ($\frac{1}{4}$) of the southeast quarter ($\frac{1}{4}$) of section 14, township 24 south, range 1 east, containing 160 acres, situated in the County of Lane and State of Oregon.

Witnesses: H. G. McKinley and B. M. Jones.

Acknowledged ·August 20, 1901, before H. G. McKinley, Notary Public in and for Lane County, State of Oregon.

### No. 11.   Warranty Deed.

| | |
|---|---|
| *Grantor* — Emma L. Watson (widow. | Consideration, $2,100.00. Date, January 7, 1902. Recorded February 10, 1902. |
| *Grantee* — P. F. Woodford. | Book —, page —. |

*Description* — In the County of Lane and State of Oregon, to wit: Southwest quarter section twelve (12), east half of northeast quarter, east half of southeast quarter, west half of northeast quarter, southeast quarter of northwest quarter, northwest quarter of southeast quarter, section fourteen (14), township twenty-four (24) south, range one (1) east, Willamette Meridian, containing four hundred and eighty (480) acres.

Witnesses — G. B. McLeod and H. R. Robertson.

Acknowledged January 7, 1902, before G. B. McLeod, Notary Public in and for Multnomah County, State of Oregon.

### No. 12.   Quitclaim Deed.

| | |
|---|---|
| *Grantor* — P. E. Woodford (widow). | Consideration, $5.00. Date, February 18, 1902. Recorded February 19, 1902. |
| *Grantee* — G. B. McLeod. | Book —, page —. |

*Description* — All my right, title, and interest in and to the following described parcel of real estate situate in County of Lane, State of Oregon, to wit: Southwest quarter (S.W. $\frac{1}{4}$) section twelve (12), northeast quarter, east half of southeast quarter, southeast quarter of northwest quarter, northwest quarter of southeast quarter (N.E. $\frac{1}{4}$, E. $\frac{1}{2}$ of S.E. $\frac{1}{4}$, S.E. $\frac{1}{4}$ of N.W. $\frac{1}{4}$, N.W. $\frac{1}{4}$ of S.E. $\frac{1}{4}$) section fourteen (14), township twenty-four (24) south, range one (1) east, Willamette Meridian, containing 480 acres.

Witnesses: E. D. Johnson and Henry E. McGinn.

Acknowledged February 18, 1902, before Henry E. McGinn, Notary Public in and for Multnomah County, State of Oregon."

A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, having been overruled, a plea in abatement was interposed to the effect that plaintiff was not the real party in interest, but that he held the legal title to said real property in trust for the Astoria Company, a corporation organized and existing under the laws of this state. A demurrer to the plea, on the ground that it did not state facts sufficient to con-

stitute a defense, having been sustained, the defendant declined further to plead or answer, whereupon the court found the facts as stated in the complaint, and gave a decree canceling the deeds executed by Watkins, Carson, and Warwick to the defendant, removing the clouds cast thereby on plaintiff's title, and forever enjoining the defendant from asserting any claim to the premises; and he appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Francis D. Chamberlain.*

For respondent there was a brief over the names of *A. E. Wheeler* and *Jas. K. Weatherford,* with an oral argument by *Mr. Wheeler.*

MR. CHIEF JUSTICE MOORE, after stating the facts in the foregoing terms, delivered the opinion.

It is contended by defendant's counsel that the complaint does not state facts sufficient to constitute a cause of suit, and that the court erred in overruling the demurrer thereto interposed on that ground, because: (1) The allegations of the complaint refer solely to the abstract of title, and not to the actual condition of such title; (2) it does not appear from the abstract that the deeds under which plaintiff claims title were sealed or acknowledged; (3) the patents do not seem to have been countersigned by the Recorder of the General Land Office; (4) the complaint fails to point out the infirmities in the deeds which it is claimed cloud plaintiff's title; (5) it presents no question of equitable right, thus showing that plaintiff's remedy was at law; (6) this suit cannot be maintained under Section 516, B. & C. Comp., as that statute was not designed to try legal titles only, but, if it was so intended, it is contrary to the organic law of the state, which guarantees to the defendant the right of a trial by jury; (7) Emma L. Watson, through whom plaintiff claims title, could not

maintain this suit for want of an averment that defendant'
had notice of her title, because the deeds to her express a
consideration of only $1 each, and therefore the convey-
ances were *prima facie* gifts, her deed not having been re-
corded until after her grantors reconveyed the premises
by warranty deed to the defendant for full value; (8) plain-
tiff claims title under a quitclaim deed releasing only the
grantor's interest in the land, and neither plaintiff nor his
grantor was ever in possession of the premises, while de--
fendant claims title under a warranty deed from the same
parties through whom plaintiff deraigns title, and hence
plaintiff is not entitled to equitable relief; and (9) plain-
tiff secured a quitclaim deed to the land on February 18,
1902, for the expressed consideration of only $5, that he
might bring this suit, which was instituted the next day,
and therefore he is not entitled to invoke the aid of a
court of equity.

1. Considering the legal principles insisted upon, in the
order stated, it is argued by defendant's counsel that the
complaint, the abstract of title attached thereto, and the
verification clearly show that the cause of suit relates to
the record title as shown in the abstract; that the actual
title, and not the record title, controls; that there may be
deeds executed to the defendant for said land that are not
of record, but are binding on plaintiff, which give defend-
ant a perfect title; that there may be facts not appearing
of record that are binding on plaintiff, rendering his title in-
ferior to the defendant's; and that it is not a sufficient aver-
ment to allege that plaintiff has the better title "according
to the attached abstract of record." It will be remem-
bered that the complaint alleges that plaintiff is the abso-
lute and unqualified owner in fee simple of all the real
property described therein, "as is shown by the abstract
of title hereto attached, marked 'Exhibit A,' and made
part hereof." It has been held in this state that identified

exhibits attached to a pleading constitute a part thereof, not for the purpose of supplying material averments, but with the design of particularizing the description and of itemizing the values stated therein : *Caspary* v. *Portland*, 19 Or. 496 (24 Pac. 1036, 20 Am. St. Rep. 842); *Riley* v. *Pearson*, 21 Or. 15 (26 Pac. 849). The exhibit which is made a part of the complaint is specific in character, and, under the rule adopted by this court, the statement in the pleading that plaintiff is the owner of the real property, as described by such exhibit, is equivalent to alleging that his title was secured from the source and derived from the persons named in the abstract. It is possible that facts not stated in the complaint, or that unrecorded deeds, may be in existence showing that defendant has the superior title ; but, if this were so, no difficulty would have been encountered in alleging such facts in the answer. The averment of facts in the complaint, in respect to the title to the premises, as disclosed by the abstract, made a *prima facie* showing of the actual condition of the title, sufficient to render the allegation invulnerable to the demurrer, and, if the statement be false, the defendant had the privilege and should have controverted the facts stated therein.

2. An examination of the abstract discloses that the several deeds were acknowledged, and the names of the officers making the certificates thereof given, but it fails to specify that any of the deeds were sealed. The statute prescribing the mode of transferring the title to real property is as follows : "Conveyances of lands, or of any estate or interest therein, may be made by deed, signed and sealed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged or proved, and recorded as directed in this chapter without any other act or ceremony whatever :" B. & C. Comp. § 5333. The term "deed," in this state, is synonymous with a sealed instrument, so that the

statement in the abstract, not only of the deed adopted to effectuate the transfer of the title, but the character thereof, sufficiently implies that the several instruments enumerated in the chain of title were sealed.

3. All patents issuing from the General Land Office shall be issued in the name of the United States, and be signed by the President, and countersigned by the Recorder of the General Land Office, and shall be recorded in the office, in books to be kept for the purpose: Rev. Stat. U. S. § 458 (U. S. Comp. St. 1901, p. 259). It shall be the duty of the Recorder of the General Land Office, in pursuance of instructions from the Commissioner, to certify and affix the seal of the office to all patents for public lands, and to attend to the correct engrossing, recording, and transmission of such patents: Rev. Stat. U. S. § 459 (U. S. Comp. St. 1901, p. 259). In *McGarrahan* v. *Mining Co.* 96 U. S. 316, Mr. Chief Justice WAITE, in speaking of the several steps necessary to evidence a transfer of public lands by the general government, says: "Thus it appears that a patent for lands must be signed in the name of the President, either by himself or by his duly appointed secretary, sealed with the seal of the General Land Office and countersigned by the Recorder. Until all these things have been done, the United States has not executed a patent for a grant of lands. Each and every one of the integral parts of the execution is essential to the perfection of the patent. They are of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory." It being incumbent upon the Recorder of the General Land Office to countersign all patents for public lands, and to affix his seal of office thereto, and also to attend to the transmission of such instruments, the statement in the abstract that the patents there mentioned were recorded invokes the presumption that official duty

has been regularly performed (B. & C. Comp. § 788, subd. 15), and justifies the inference that the patents in question were issued with all the formalities that the law requires.

4. A suit to remove a cloud upon a title is instituted to determine the invalidity of an apparently efficacious instrument, the infirmities of which cannot be ascertained from inspection, but resort must be had for that purpose to extrinsic evidence, to let in which it is necessary to allege in the complaint the facts constituting such invalidity: *Teal* v. *Collins*, 9 Or. 89; *Moores* v. *Clackamas County*, 40 Or. 536 (67 Pac. 662). In *Shannon* v. *Portland*, 38 Or. 382 (62 Pac. 50), Mr. Justice WOLVERTON, commenting upon the sufficiency of the allegation and the nature of the proof necessary to sustain a suit of this character, says: "It is essential to the maintenance of such a suit to assert and establish (1) the particular muniment or record constituting the cloud; and (2) the infirmity attending it which renders it a nullity as to the complainant, for, if he does not show it to be a nullity, he must fail of his purpose." In *Lick* v. *Ray*, 43 Cal. 83, the court, defining what constitutes a cloud on title and when a suit for its removal may be maintained, say: "It is settled by a long line of decisions in this court that if the title against which relief is prayed be of such a character as that, if asserted by action and put in evidence, it would drive the other party to the production of his own title in order to establish a defense, it constitutes a cloud which the latter has the right to call upon the court to remove and dissipate." It must be assumed in the case at bar that the deeds set out in the abstract, numbered 3, 7, and 10, respectively, are apparently valid instruments, and that an inspection thereof would not disclose any imperfections therein; but when the deeds executed to Emma L. Watson, and recorded prior to those the defendant received, are considered, the conclusion reached necessarily tends to render

the latter's deeds ineffectual, because his grantors, having parted with the title to the land, had none to transfer. It will be remembered that the complaint alleges that the defendant claims some interest, right, or title to said lands, which claim is unfounded, illegal, unjust, and contrary to law and to equity, as shown by said Exhibit A. This averment, aided as it is by the exhibit, which calls attention to the public record, is, in our opinion, a sufficient compliance with the rule requiring the complaint to allege the facts constituting the invalidity of the instruments which cast a cloud upon title; for the object of every pleading is to call the attention of the court and of the adverse party to the facts relied upon to sustain the theory adopted by the pleader, and, when such facts are matters of public record, the volume and page of which are given, as in the case at bar, and thus presumptively within the defendant's knowledge, the necessity for the same degree of particularity in stating them does not exist as in other cases.

5. The mode provided for the recovery of real property is as follows: "Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action at law. Such action shall be commenced against the person in the actual possession of the property at the time, or if the property be not in the actual possession of any one, then against the person acting as the owner thereof": B. & C. Comp. § 326. It will be remembered that the complaint, in referring to the real property in question, contains the allegation "that the said lands are all unseated, unimproved, and unoccupied, and not in the actual possession of any person." It will be observed that the language quoted does not in express terms negative the fact that defendant, though not in possession of the real property, may have been acting

as the owner thereof at the time the suit was instituted ; but we are of the opinion that the averment that "said lands are all unseated, unimproved, and unoccupied" is equivalent to such negation.  In *Kennedy* v. *Daily*, 6 Watts, 269, it was held that residence without cultivation, or cultivation without residence, or both, constitutes seated land. The term "unseated," when used to denote a condition of real property, would therefore seem to mean that class of lands which are neither in the possession of or cultivated by any person.  It must be admitted that almost every act of ownership of real property necessarily results in improving its condition, for, in *Garner* v. *Marshall*, 9 Cal. 268, in illustrating the expression, "exercise of acts of ownership," Mr. Justice FIELD remarks that they are "such as inclosure, cultivation, and the like," and hence the averment that the premises in question were unimproved impliedly negatives the fact that defendant was acting as the owner thereof, so that, if it be necessary to negative a right of action for the recovery of real property before a court of equity could acquire jurisdiction to remove a cloud from the title thereto — a question not necessary to a decision herein — the complaint complies with such requirement.

6.  The statute regulating the mode of removing a cloud from and of quieting the title to real property is as follows : "Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates": B. & C. Comp. § 516.   Though a suit to remove a cloud and one to quiet title are essentially different in the manner of stating the facts constituting the equitable right, the relief is substantially identical in both cases, and, this being so, a person claiming an interest or estate in real property

*43 Or.—18.*

not in the possession of another may maintain a suit to
remove a cloud on his title without being in the actual
possession of the premises, the amendment of the statute
(Laws, 1899, p. 227) having enlarged the equitable remedy :
*Moores* v. *Clackamas County*, 40 Or. 536 (67 Pac. 662).  In
*Head* v. *Fordyce*, 17 Cal. 149, Mr. Chief Justice Field, con-
struing the language of a similar act, says: "The statute
giving this right of action to the party in possession does
not confine the remedy to the case of an adverse claimant
setting up a legal title, or even an equitable title; but the act
intended to embrace every description of claim whereby
the plaintiff might be deprived of the property, or its title
clouded, or its value depreciated, or whereby the plaintiff
might be incommoded or damnified by the assertion of
an outstanding title already held or to grow out of the ad-
verse pretension.  The plaintiff has a right to be quieted
in his title whenever any claim is made to real estate of
which he is in possession, the effect of which claim might
be litigation or a loss to him of the property."  To the
same effect see *Dean* v. *City of Madison*, 9 Wis. 402.  The
invalidity of defendant's claim to the premises is not ap-
parent from an inspection of his deeds, and is only shown
by the introduction of plaintiff's deeds.  The editors of
the Encyclopedia of Pleading and Practice, in a note to
volume 17, page 286, in discussing the adequacy of a legal
remedy to defeat a suit instituted to remove a cloud on
title, say : "Where the facts which show the invalidity of
the claim are all of record, the bill will not be entertained."
The force of this rule, in the absence of a statute prescrib-
ing a contrary method, is not to be denied, but it must be
admitted that the legislative assembly possessed plenary
power to regulate the mode of procedure in suits in equity
in all cases, and may enlarge the jurisdiction of courts in
reference thereto, unless in doing so the rights of a de-
fendant are necessarily abridged.

The organic law of the state contains the following dec-
laration : "In all civil cases, the right of trial by jury shall
remain inviolate ": Const. Or. Art. I § 17. The statute
prescribing the character of the subject-matter of which
equity will entertain jurisdiction is as follows : "The en-
forcement or protection of a private right, or the preven-
tion of or redress for an injury thereto, shall be obtained
by a suit in equity in all cases where there is not a plain,
adequate, and complete remedy at law, and may be ob-
tained thereby in all cases where courts of equity have
been used to exercise concurrent jurisdiction with courts
of law, unless otherwise specially provided in this title ":
B. & C. Comp. § 390. In *Grand Rapids & I. Ry. Co.* v.
*Sparrow,* 36 Fed. 210 (1 L. R. A. 480), a suit having been
commenced in a state court to quiet the title to certain
real property, was removed into a federal court, where it
was contended that an amendment of a statute of Mich-
igan, permitting a person claiming the legal or equitable
title to lands, "whether in possession or not," to institute
a suit against any other person, "not in possession," set-
ting up a claim thereto in opposition to the title claimed
by the claimant, violated the right of a trial by a jury. It
was held, however, that the right insisted upon was not
infringed, the court saying : "Respecting the argument
that the act of the legislature of Michigan (Pub. Acts 1887,
No. 260, p. 337), extending the jurisdiction of the court of
equity to quiet titles to cases where the lands are unoc-
cupied, is unconstitutional because it deprives the defend-
ant of the right to trial by jury secured by the Constitu-
tion of Michigan (Article VI, § 27), I think it must be
held that this constitutional provision extends only to
cases where by the common law a trial by jury was cus-
tomary. It does not reach those cases where the remedy
is given by statute. At common law ejectment did not lie
where the defendant was not in possession, and it is sus-

tainable in such a case only by virtue of the statute in Michigan." In *Wong* v. *Astoria,* 13 Or. 538 (11 Pac. 295), Mr. Justice Thayer, in speaking upon this subject, says : "The right of trial by jury provided for in the Constitution of the United States, and of various states, is understood to mean the common-law trial by jury." The defendant not being in possession of the real property in controversy, nor acting as the owner thereof, plaintiff could not have maintained an action of ejectment against him (B. & C. Comp. § 326); and, as defendant's common-law right to a trial by jury depended upon his possession, the statute enlarging plaintiff's remedy by permitting him to maintain a suit to remove a cloud upon title, though also not in possession, does not deprive the defendant of any right guaranteed him by the fundamental law of the state.

7. The abstract attached to the complaint shows that the deeds executed by Watkins, Abbott, and Carson, respectively, to Emma L. Watson, under whom plaintiff's title to the premises is derived, each express a consideration of only $1; and it is argued by defendant's counsel that these conveyances to her were *prima facie* voluntary, and presumptively fraudulent as to the defendant, who paid full value for the premises, and that, as the complaint did not allege that defendant secured his deeds with notice of the prior conveyances to her, it did not state facts sufficient to constitute a cause of suit, and that the court erred in overruling the demurrer thereto. The statute of 27 Elizabeth, c. 4, provides in effect that all conveyances of lands, etc., made with intent to defraud subsequent purchasers, shall, as against such purchasers, their heirs, and all other persons claiming under them, who shall purchase for money or other good consideration, be void : Bispham, Equity, (4 ed.), § 250; 4 Kent, Com. *463. Our statute upon this subject, so far as deemed applicable herein, is as follows: "Every conveyance * * of lands * * made

* * with intent to defraud * * subsequent purchasers
for a valuable consideration of the same lands * * as
against such purchasers shall be void ": B. & C. Comp.
§ 5502. " No such conveyance * * shall be deemed fraud-
ulent in favor of a subsequent purchaser who shall have
actual or legal notice thereof at the time of his purchase,
unless it shall appear that the grantee in such conveyance
* * was privy to the fraud intended ": B. & C. Comp.
§ 5503. A perusal of this act will disclose that, to render
such a conveyance inoperative, the grantor must have
actually intended to defraud the subsequent purchaser,
who must have paid a valuable consideration for the land
and secured a deed therefor without notice of the prior
conveyance; or, if he had such notice, then, to protect
him, he must be able to establish the fact that the prior
grantee was a party to the original fraud. To defeat plain-
tiff's title, the burden of alleging a want of notice, or, if
notice was given, then that the prior grantee participated
in the fraud, was imposed upon the defendant. In *McIn-
tyre* v. *Kamm,* 12 Or. 253 (7 Pac. 27), Mr. Chief Justice
WALDO, discussing a similar question, makes the follow-
ing observation : " This being a controversy between legal
titles, the defendants could have assailed the plaintiff's
title on the ground of notice or want of consideration at
law : *Jackson* v. *Burgott,* 10 Johns. 457 (6 Am. Dec. 349).
But the burden was on the defendants to set up the facts
invalidating the plaintiff's title, and to prove them at the
trial." Assuming, without deciding, that the recital of $1
as a consideration affords *prima facie* evidence of volun-
tary conveyances executed by Watkins, Carson, and War-
wick to Emma L. Watson, the burden was not imposed
upon plaintiff to allege or prove a negative, but upon the
defendant to aver a want of notice, or, if such notice were
given or implied, to state such facts as would obviate the

effect thereof. Not having done so, the alleged want of notice cannot be raised by demurrer.

8. Plaintiff claims title under a quitclaim deed from persons who were never in possession of the premises, while defendant claims title by warranty deed for full value from the persons through whom plaintiff derives his title, and it is maintained that because the complaint fails to aver fraud, accident, or mistake, it does not state facts sufficient to warrant equitable interference. The point contended for is without merit, for in *Dull's Appeal* 113 Pa. 510 (6 Atl. 540), it was held, in a suit to remove a cloud from title, that the authority of a court of equity to grant relief in such cases did not depend upon an allegation of the facts insisted upon, Mr. Justice GREEN, speaking for the court in deciding the case, saying : " The jurisdiction has been asserted and enforced as an independent source or head of jurisdiction, not requiring any accompaniment of fraud, accident, mistake, trust, or account, or, indeed, any other basis of equitable intervention."

9. If it be conceded that plaintiff secured a quitclaim deed to enable him to maintain this suit, and that he instituted it the next day after his deed was executed, such facts did not defeat his right, and, believing, as we do, that the complaint stated facts sufficient to constitute a cause of suit, no error was committed in overruling the demurrer.

10. It is contended by defendant's counsel that the plea in abatement shows that plaintiff was not the real party in interest, and that the court erred in sustaining a demurrer thereto. The complaint alleges that plaintiff is the absolute and unqualified owner of the property in fee simple, and the abstract tends to show that he held the legal title thereto. If, however, the conveyance was made to him in trust for the Astoria Company, he nevertheless by his deed secured such an interest in the premises as

would enable him to maintain this suit, for the rule is well settled that an agent who makes a contract in his own name, without disclosing the name of his principal, may maintain a suit in his own name: Bliss, Code Pl. § 57; Pomeroy, Code Rem. § 141. No error was committed in sustaining his demurrer to the plea.

11. It is also maintained by defendant's counsel that there was no evidence introduced at the trial upon which to base the findings made by the court. There being no answer to the merits, no issue of fact was presented for trial, and, this being so, the court very properly made its findings in conformity with the averments of the complaint, which were tacitly admitted. The statute of this state limiting the time within which a deed should be recorded, and prescribing the consequences that may possibly result from a failure to comply therewith, is as follows: "Every conveyance of real property within this state hereafter made, which shall not be recorded as provided in this title within five days thereafter, shall be void against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance shall be first duly recorded": B. & C. Comp. § 5359. In *Fleschner* v. *Sumpter*, 12 Or. 161 (6 Pac. 506), in construing the language quoted, it was held that, where neither of two conveyances is recorded within the time prescribed, the one that is thereafter first recorded will take priority. Mr. Justice Thayer, in deciding the case, says: "The prior recording of the prior conveyance at any time after its execution will give it precedence. So will the prior recording of the subsequent conveyance give it precedence over a prior one subsequently recorded, although neither of them be recorded within the five days." In the case at bar the abstract, which is made a part of the complaint, shows, and the demurrer thereto admits, that the deeds executed to Emma

L. Watson, plaintiff's predecessor in interest, July 27 and 31, and August 3, 1901, respectively, were recorded September 21st of that year, and that the deeds executed by her grantors to the defendant and acknowledged August 20, 1901, were not recorded until November 16th of that year. The defendant's deeds not having been recorded within five days after their execution, and those executed to plaintiff's predecessor in interest having been first recorded, the court, by invoking the maxim that where there are equal equities the first in time shall prevail, properly concluded that plaintiff's right to the relief sought was thereby established, and, concurring in that view, the decree is affirmed.                                      AFFIRMED.

ON MOTION TO RECALL MANDATE AND FOR LEAVE
TO ANSWER.

PER CURIAM.    12. This is a motion to recall the mandate in order that a provision may be inserted therein permitting the defendant to apply to the court below for leave to answer by pleading that the property in controversy is not in Lane, but is in Douglas County, and that the defendant's deed, although of subsequent date to plaintiff's, was first recorded in the latter county. In the court below the defendant demurred to the complaint, but his demurrer was overruled, and he declined to plead further. A decree was then entered in favor of the plaintiff, as prayed for in the complaint, from which an appeal was taken, and the decree was affirmed. In cases of this character, it is discretionary with this court either to enter a final decree here, or to remand the suit for such further proceedings as it may deem right and proper.

13. If the case be remanded, it is open to the court below to determine in the first instance whether the defendant shall be permitted to plead further : *Powell* v. *Dayton*

*S. & G. R. Co.* 14 Or. 22 (12 Pac. 83); *Fowle* v. *House*, 30
Or. 305 (47 Pac. 787); *State ex rel.* v. *Metschan*, 32 Or. 372
(46 Pac. 791, 53 Pac. 1071, 41 L. R. A. 692). The ques-
tion as to the proper procedure in the present suit was
presented and determined on the petition for rehearing,
and the conclusion then reached necessarily disposes of
the present motion.               MOTION OVERRULED.

<div align="center">

Decided 29 June, 1903.