Argued July 2, affirmed as modified September 26, petition for
rehearing denied October 24, 1962

# MORELAND *v.* MORELAND

374 P. 2d 741
375 P. 2d 242

*Bruce W. Williams,* Salem, argued the cause for appellant. On the brief were Williams & Skopil, Salem.

*Sam F. Speerstra,* Salem, argued the cause for respondent. On the brief were Rhoten, Rhoten & Speerstra, Salem.

Before Rossman, Presiding Justice, and Warner, Perry, Sloan and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff (husband) and a cross-appeal by the defendant (wife) from parts of a decree entered by the circuit court which (1) granted

a divorce to the plaintiff, (2) awarded the plaintiff the custody of the two children (boys) of which the parties are the parents, (3) divided between the plaintiff and the defendant the property (real and personal) of which the parties were the owners, (4) directed the plaintiff to pay the defendant $1,000 monthly as alimony and support money, (5) ordered the plaintiff to pay the defendant $7,500 on account of her attorney fees and (6) awarded some ancillary relief which is immaterial to this appeal.

The plaintiff (husband), in appealing, presents these two assignments of error:

1. "The trial court erred in awarding to the wife, the party at fault, the sum of $1,000.00 per month alimony until her death or until she remarries."

2. "The trial court erred in awarding the defendant-Respondent wife the sum of $7,500.00 attorney fees under the testimony introduced during the trial."

Following are the defendant's (wife's) two assignments of error:

1. "The trial court erred in granting plaintiff an absolute decree."

2. "The court erred in failing to grant defendant an absolute divorce."

Plaintiff and defendant were married August 15, 1945, and are the parents of two boys whose ages in April 1961 were 10 and 7 years. The decree of divorce awarded the custody of the boys to the plaintiff subject to visitation rights which were granted to the defendant. The trial judge, pursuant to the prayers of the complaint and the answer, divided between husband and wife their property; this appeal does not challenge his action in so doing nor its fairness.

The complaint alleged that the defendant had subjected the plaintiff to cruel and inhuman treatment in these particulars: (1) imbibed in excessive amounts of liquor, (2) indicated repeatedly that she no longer had any affection for the plaintiff, (3) remained away "from the family home of the parties until early hours of the morning without offering explanation thereof," (4) criticized the plaintiff constantly, and (5) contracted habitual gross drunkenness since marriage and continued the condition for a year prior to the commencement of the suit.

The answer alleged that the plaintiff earned in excess of $50,000 annually and a basis for relief in the defendant's favor charged that (1) the plaintiff has been unduly critical of the defendant and has nagged her, (2) the plaintiff "has cultivated an irritable disposition toward the defendant," (3) the plaintiff "no longer loves the defendant" and "desires to get rid of her so that he may marry someone else," (4) "plaintiff remains away from the family home * * * without explanation and frequently goes on long trips and refuses to allow the defendant to accompany him," and (5) "cultivated and acquired a dominating, overbearing and egotistical attitude toward the defendant and * * * has ridiculed, insulted, ignored and threatened the defendant."

■ The trial of this case consumed three days. Testimony was taken, which as transcribed, covers 521 pages. The trial judge gave to the case close attention. He asked many questions and on occasions requested a party or a witness for additional facts in an effort to resolve a doubt. In a memorandum opinion he stated:

"Dr. Moreland says his wife began to drink excessively. Apparently, if we believe the doctor and

some of the witnesses, including Mrs. Moreland herself, and Dr. Le Mere, Mrs. Moreland has a very serious drinking problem. * * * her testimony, taken in connection with that of the Doctor's and in connection with many of the other witnesses would indicate to this writer that the Doctor has established by a preponderance of the evidence that Mrs. Moreland has been guilty of habitual gross drunkenness contracted since the marriage of the parties, and continuing for one year prior to the commencement of the suit involved in this case. The stark tragedy of her drinking in the lives of her two sons was established by a preponderance of the evidence."

Dr. Le Mere (Dr. Frederick Le Mere) who is mentioned in the quoted language is a physician in Seattle who serves as the psychiatric consultant of Shadel Hospital of Seattle to which the defendant resorted on several occasions for treatment of her drinking problem. Shadel Hospital specializes in the treatment of alcoholism.

We have read and studied all of the evidence. We are satisfied that the trial judge's summation of the part of it which pertains to excessive drinking is warranted. Nothing would be gained if we set forth in this opinion a synopsis or analysis of this unfortunate woman's experience with alcohol. We adopt the trial judge's conclusion, above quoted, as our own.

The trial judge's memorandum opinion, to which we have referred, contains this statement also:

"The testimony of Dr. Moreland and the exhibits on file herein show that Dr. Moreland has developed and created an outstanding practice in the field of his specialty. His adjusted gross income on Form 1040 for the year 1960 is $57,447.24. Dr. Moreland has been an active participant and leader in many medical societies. His intelligence,

competency and dedication have been forged as the basis for his outstanding success in his chosen specialty. One would have thought that the professional and financial accomplishments of this doctor would have provided a solid foundation for the success of this particular marriage."

We add that the plaintiff's success did not result from the possession of an ample purse or well-placed relatives and friends. The young couple had virtually no money when they came to Salem as strangers in April of 1949, after the plaintiff had completed his courses of study and training. He practices opthalmology. The plaintiff, however, had aptitude, willingness to work and unusual attachment to the work in which he is engaged. The defendant was described as "lovely." At the beginning the defendant performed well her part in the matrimonial venture, but by 1955 alcohol became increasingly her problem and she then became a problem for the plaintiff. Before long the social activities of the young couple and the number of their friends declined as the defendant's addiction to liquor became more pronounced. About that time she experienced a feeling that she termed "an inferiority complex."

■ We do not believe that the charges made by the defendant in her answer, which we have quoted, are sustained by the evidence. We are satisfied that the plaintiff at times engaged in acts of thoughtlessness or possibly bits of indiscretion that caused the defendant momentary chagrin. But they were inconsequential in nature and were soon passed over for their true character as slip-ups. No wife is entitled to a perfect husband; in any event, the matrimonial altar has never supplied one.

When the defendant's alcoholic problem began to

develop the plaintiff displayed commendable patience in dealing with the situation and made suggestions to his wife in efforts to overcome the difficulty. The defendant offers no criticism of his patience or what he did in his efforts to help her. He recommended a physician who he believed could help the defendant. He also suggested that she engage in social, recreational and civic activities which he named and which he thought would engross her attention to the exclusion of drinking. In the meantime, to use her words, the plaintiff became virtually a teetotaler. When conditions did not improve the plaintiff told his wife that he would be unable to tolerate the condition much longer. He mentioned as a possible solution a divorce.

In November of 1958 the plaintiff instituted this suit for divorce and service of complaint and summons was made upon the defendant. After that had been done the plaintiff and the boys moved out of the home. December 5 or 6 the defendant went to Seattle where her parents reside and shortly entered Shadel Hospital.

The defendant concedes that when she returned to Salem the plaintiff suggested reconciliation. It was attempted but failed. A subsequent attempt also failed.

Possibly some husbands faced with the heart-rending sight and problem which confronted the plaintiff through his wife's craving for liquor would not have displayed the patience, tolerance and willingness to help that the plaintiff manifested. It may be that many would have exhibited the course of conduct that the answer charges against the plaintiff. But we are satisfied that the charges which the defendant makes against the plaintiff are not true.

The defendant suffers from a condition which was described by the use of the words "nervous," "upset,"

and "tense." She also testified that she felt lonely. Her unsatisfactory mental and nervous condition stimulates her desire for liquor. She sought to charge her plight to the plaintiff. We have mentioned the patience and thoughtfulness that he employed in dealing with her problem. We note that in 1952 the couple purchased a large expensive home in a desirable location of Salem. Shortly the plaintiff made improvements to the home at a cost of $7,500. The testimony indicates that the plaintiff with his own hands made some of the alterations. He appears to be devoted to his home.

It is our belief that the divorce was properly awarded to the plaintiff and not to the defendant.

We will now consider the plaintiff's assignments of error:

ORS 107.100 (4) states:

"Whenever a marriage is declared void or dissolved, the court shall make such division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances, in addition to any further relief decreed or provided for in subsection (1), (2) or (3) of this section."

That provision was enacted in 1953 as Oregon Laws 1953, Chapter 635, Section 1.

Parts of the decree which (1) awarded the defendant "her personal automobile, and her clothing, jewelry and personal effects" and (2) directed the plaintiff to pay the defendant (a) $5,000 in cash "forthwith" and (b) place with a bank or trust company $25,000 in trust "for the use and benefit of the defendant" were the manner in which the decree divided the property. We

have mentioned that that part of the decree is not challenged by the assignments of error.

ORS 107.100 (1) provides:

"Whenever a marriage is declared void or dissolved, the court has power further to decree as follows:

\* \* \*

"(c) For the recovery from the party at fault such amount of money, in gross or in installments, or both, as may be just and proper for such party to contribute to the maintenance of the other; \* \* \*"

*Bennett v. Bennett,* 208 Or 524, 302 P 2d 1019, ruled:

"Under subd. (c) of § 1 of ORS 107.100 supra, it is clear that an allowance for support and maintenance may be awarded by the court only to a party not at fault."

In that case an award of $2,000 was made to the wife by the challenged decree as "lump sum alimony," but she was the party at fault. The decree of divorce was awarded to the husband. This court's opinion said:

"\* \* \* If in truth the award of $2000 to the defendant in this suit was actually an award for support or maintenance or alimony in the true sense of the term 'alimony,' then it would follow that the court was without jurisdiction to make such an award."

In the case at bar the decree made the award of $1,000 per month as maintenance money; its own words are "as alimony and support."

The defendant argues that Oregon Laws 1961, chapter 418, authorized the trial judge to make to her an award of maintenance money even though she was the party at fault. That section of laws is now ORS

107.410. It says, "when a court is sitting in proceedings for divorce, annulment or separation, it shall have full equity powers." It will be noticed that ORS 107.100 (1) (c) uses the restrictive term "party at fault." The quoted term appears to be a critical part of the act, and we do not believe that the legislature intended that it should be taken lightly. The 1961 enactment does not repeal that term. At common law a husband owed a duty to support his wife, but alimony was a creation and an attribute of the ecclesiastical courts—not of the equity or common law courts. The defendant also argues that we should deem the monthly award of $1,000 as a division of the couple's property, and not as alimony. We have mentioned the parts of the decree which award to the defendant $30,000 cash as her part of the parties' accumulated property, apart from such minor items as the automobile, clothing, jewelry and so on. We set forth that part of the decree because it shows that the circuit court made both a division of property and an award of maintenance money. We think that it is clear that the monthly payment of $1,000 was intended to be "alimony and support" as the decree itself states. We are aware of no provision of our laws which sustains this award.

We come now to the part of the decree which directs the plaintiff to pay "on account of defendant's attorneys fees the sum of $7,500.00." The plaintiff argues that the amount is excessive.

■ An attorney who was called as a witness by the defendant upon the issue of the amount which should be awarded to the defendant for her attorney answered a hypothetical question, based upon the facts of this case, by saying that a fee "between seven thousand and eighty-five hundred dollars" would be reasonable. The question stressed the amount of the plain-

tiff's income. Opinion evidence of that character is not binding upon a court. However, it is informative and worthy of careful consideration.

Canon 12 of the Canons of Professional Ethics, adopted by the American Bar Association, so far as pertinent to this case, states:

"* * * A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. * * *

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; * * * (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; * * * No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

The substance of that Canon was incorporated in the Schedule of Minimum Fees and Charges adopted by the Oregon State Bar September 26, 1959.

It is useless to state once more the rules of a general nature which jurisprudence has fashioned as formulas governing the amount of an attorney's fee. ■ This case submitted no difficult issue of law. A suit for divorce frequently may be more important to the parties than one involving merely money even though in the latter type of case a large sum may be at stake. If one or both of the parties is charged in the pleadings with a violation of a criminal statute or the moral code the consequences may mean social ostracism or disfavor. A divorce case may involve

for the wife her future economic condition, and if it does, the husband may view the suit as one threatening him with a heavy burden. The total involved may be substantial and more than in cases of an important commercial nature. A divorce suit is of a more personal nature to the wife and husband than the ordinary run of litigation. It may require them to suffer the embarrassment of revealing publicly from the witness stand facts of an intimate, personal nature that they had intended to guard forever from even their closest friends. If the case involves the custody of children that were born of the union, the attorney's responsibility is greatly increased. A worthy parent will often struggle harder for the custody of his minor children than for the possession of the family treasury. In this case the defendant, mother of the children, has not stressed to the extent that one would expect the custody of the children. An element that must be taken into account in fixing the size of a wife's attorney fee is that she should be in a position to retain for herself an attorney of ability comparable to the one chosen by her husband. In cases of this kind, if the parties are of prominence in the community, the outcome of the case may have a substantial effect upon their social status. All of these facts emphasize the responsibility borne by the attorney who represents parties in divorce litigation.

■ After having taken all of the foregoing into consideration we are of the opinion that the fee awarded to the defendant for her counsel should be $5,000.

With the above modifications, that is, the elimination of the $1,000 monthly alimony and the reduction of the attorney's fee to $5,000, the decree of the circuit court is affirmed.

Costs and disbursements to neither party.

ON REHEARING

Rhoten, Rhoten & Speerstra, Salem, for the petition.

Williams & Skopil, Salem, contra.

ROSSMAN, J.

A petition for a rehearing filed by the defendant-respondent invites attention to the fact that counsel for the plaintiff-appellant (husband) expressed a belief during oral argument that if the trial judge had not awarded to the defendant the monthly alimony of $1,000 which we held was beyond his powers, he would have granted her a larger part of the property accumulation. In view of that statement the cause is remanded to the circuit court so that it may make any alteration to the part of the decree dividing the property which it may deem just, provided it is not satisfied now with that part of the decree.

Petition for rehearing denied; cause remanded.