Argued December 9, 1966, reversed February 1, petition for
rehearing denied April 11, 1967

PROTRKA, *Respondent, v.* PALMER,
*Appellant.*

423 P. 2d 514

*Robert J. Johnston,* Portland, argued the cause and filed a brief for appellant.

*Keith Burns,* Portland, argued the cause for respondent. With him on the brief were Willner, Bennett, Leonard & Burns, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

GOODWIN, J.

This is a suit by a former wife to quiet title to a dwelling house once held by herself and her husband as tenants by the entirety. The defendant husband appeals from a decree quieting title in the wife.

The principal question is whether a court of equity, in a suit to quiet title under ORS 105.605, can make the same kind of equitable distribution of real property between persons divorced in another jurisdiction that an Oregon court hearing divorce and separation matters could have made under ORS 107.100[1] or 107.280.[2]

During their marriage, the parties had purchased Oregon real property as tenants by the entirety. Both parties allege that the wife obtained a decree of divorce in Mexico. They concede that the foreign divorce decree made no attempt to dispose of their respective

---

[1] ORS 107.100 "(1) Whenever a marriage is declared void or dissolved, the court has power further to decree as follows:

"*  *  *  *  *

"(d) For the delivery to one party of such party's personal property in the possession or control of the other at the time of giving the decree.

"*  *  *  *  *

"(h) for the extinguishment and barring of dower and curtesy.

"*  *  *  *  *

"(4) *  *  * [T]he court shall make such division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances *  *  *."

[2] ORS 107.280 "Whenever a decree of permanent or unlimited separation from bed and board has been granted, the party at whose prayer such decree was granted shall be awarded in individual right such undivided or several interest in any right, interest, or estate in real or personal property owned by the other or owned by them as tenants by the entirety at the time of such decree, as may be just and proper in all circumstances, in addition to the decree of maintenance. The court may, in making such award, decree that dower and curtesy, as well as homestead rights under ORS 116.010 and the election provided in ORS 113.050, are extinguished and barred."

interests in their Oregon real property. Because neither party has challenged the Mexican divorce, we will assume that it was as valid as any other divorce that might have been obtained by one of these parties outside Oregon.

Before going to Mexico, the wife had sued in an Oregon circuit court for separation from bed and board. Her present claim of title to the house in question is grounded upon a decree of temporary separation from bed and board awarded on August 27, 1963. Under the provisions of ORS 107.260,[9] such a decree may provide for the delivery to either spouse of his personal property only. When a decree of permanent separation is granted, the court may provide for the disposition of the real property of the parties substantially as if the decree were one of absolute divorce. ORS 107.280.

■ The decree under which the wife claims recited on its face that it was a decree of limited separation, for a period of two years. It nonetheless purported to convey to the plaintiff wife all the right, title, and interest of the defendant husband in the real property described in the decree and in the pleadings in the case at bar. To that extent the decree was void.

■■ It is clear when ORS 107.260 and 107.280 are read together that the Legislative Assembly conferred upon the court the power to transfer interests in real property apart from a divorce only when it grants a decree of permanent separation from bed and board.

---

[9] ORS 107.260 "Whenever the court grants a decree of separation from bed and board, it has power further to decree as follows:
"* * * * *

"(4) For the delivery to either spouse of his personal property in the possession or control of the other at the time of granting the decree.
"* * * * *."

It is argued that ORS 107.410,[2] which confers full equity powers upon courts in divorce cases, authorizes the disposition of the real property in a temporary separation decree. We hold that it does not.

There is no evidence that the Assembly intended by enacting ORS 107.410 to repeal its rather carefully drawn distinctions between a decree of limited separation and one of permanent separation. See, on a related question, *Moreland v. Moreland,* 232 Or 309, 374 P2d 741, 375 P2d 242 (1962), where we held that a statute giving the court the power to order the party at fault to contribute to the maintenance of the other party was not amended by ORS 107.410 so as to strike out the significance of fault.

■ Following the entry of the separation decree, the parties to this suit remained for a time married to each other. They also remained tenants by the entirety to the extent of their equity in the dwelling in question. If the parties ever ceased to be tenants by the entirety, they became tenants in common. *Brownley v. Lincoln County,* 218 Or 7, 12, 343 P2d 529 (1959). No valid conveyance or decree has ever divested the husband of his interest.

■ The wife now contends that the husband is estopped to make a collateral attack upon the decree of August 27, 1963. She relies upon *Swint v. Swint,* 238 Or 367, 395 P2d 114 (1964). There we held that a husband was estopped to challenge a void decree after (1) he had accepted the fruits thereof, and (2) his wife had died. The death of the wife made it impossible for the parties to go back into court to obtain a valid divorce. (An oversight in failing to serve the district attorney had rendered their decree void.)

[2] ORS 107.410 "When a court is sitting in proceedings for divorce, annulment or separation, it shall have full equity powers."

In the case at bar, while the husband apparently received possession of an automobile under the separation decree, and thus can be said to have "accepted the fruits," the other condition noted in *Swint v. Swint* is missing. No one died. By proper proceedings, either party could have gone to court at any time until the court lost jurisdiction of the marriage to renew in that litigation a prayer for an equitable distribution of their property as an incident either of a permanent separation or of a divorce. There is no evidence that the husband forced the wife to abandon her litigation in Oregon and go to Mexico for what was apparently a more attractive remedy. There are, therefore, no strong equitable reasons for invoking an estoppel in this case.

■ Assuming the broadest range of the power of the court sitting to hear a suit to quiet title to land, equity nonetheless is said to follow the law. *First Nat. Bk. v. Multnomah Lbr. & Box Co.*, 125 Or 598, 623, 268 P 63 (1928).

■■ The statutory power of a court of equity to divide real property between husband and wife when it grants a divorce or a permanent separation is based upon jurisdiction of the marriage. But in a court of domestic relations there can be no compulsory division of real property between spouses except in a decree of divorce or permanent separation. See *Rothwell v. Rothwell*, 219 Or 221, 232, 347 P2d 63 (1959), and *Gooden v. Gooden*, 180 Or 309, 176 P2d 634 (1947).

■ A court hearing a suit to quiet title to land has no jurisdiction of a marriage as such, and, accordingly, it has no incidental power to divide property between cotenants, either during marriage or after they become tenants in common by reason of a divorce. We

express no opinion on the remedies, if any, which might be available to these parties under their present marital state.

The suit is dismissed with costs to neither party. Reversed.

SLOAN, J., dissenting.

Even though the domestic relations court may not have had jurisdiction to settle the title to the real property involved here, the court certainly did have in the present case. The parties were properly before the court, each asked for the same remedy and it could not be disputed that the property itself was within the jurisdictional reach of the court. The only claim made here is that the court made the wrong decision. The court's power to make it is not in any way challenged by defendant.

In *McLeod v. Lloyd,* 1903, 43 Or 260 at 274, 71 P 795 at 799, the opinion quoted from the California court as follows:

"* * * In *Head v. Fordyce,* 17 Cal. 149, Mr. Chief Justice Field, construing the language of a similar act says: 'The statute giving the right of action to the party in possession does not confine the remedy to the case of an adverse claimant setting up a legal title, or even an equitable title; but the act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension. The plaintiff has a right to be quieted in his title whenever any claim is made to real estate of which he is in possession, the effect of which claim might be litigation or a loss to him of the property.' "

This court followed the quoted statement and, so far as I can find, has never deviated from it. As I read Pomeroy on the subject at 4 Pomeroy, Equity Jurisprudence, (1941, 5th ed) beginning at § 1395, p. 1023, the power of the court to allow the relief granted here is unquestioned.

In addition to the cases directly deciding the authority of an equity court in a suit bearing the name of "quieting title" there is the rule uniformly followed by this court that "* * * the power of a court of equity in granting relief which is purely equitable in nature cannot be limited. 'The court can always shape its remedy so as to meet the demands of justice in every case, however peculiar.' 3 Pomeroy's Equity Jurisprudence, 5 ed 574, § 910." *Amort v. Tupper*, 1955, 204 Or 279 at 290, 282 P2d 660.

The majority do not question that the evidence supports the trial court's decree. It is sent back to do over again, to have the same evidence presented to the court just so another label can be placed on the nature of the cause of suit. This is not right. The decree should be affirmed.