Argued December 19, 1950; reversed and remanded February 21;
petition for rehearing denied March 28, 1951

## MILLER (formerly PLEIN) *v.* PLEIN

### 227 P. 2d 823

*J. O. Stearns,* of Portland, argued the cause for appellant. On the brief were Stearns & Lessard, of Portland.

*Clarence X. Bollenback,* of Portland, argued the cause for respondent. With him on the brief was Dan J. Kenney, of Portland.

Before LUSK\*, Chief Justice, and ROSSMAN, HAY, LATOURETTE and TOOZE, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a decree of the Circuit Court, which granted the plaintiff's prayer for the partition of an improved fractional lot in the city of Portland owned by the parties as tenants in common. The attacked decree says:

> "That the plaintiff and defendant are the owners as tenants in common of the hereinabove described real property, and that each of said parties owns an undivided one-half interest in and to the same and that said real property shall be sold and the net proceeds of such sale, after payment of expenses of sale and compensation of the Referee shall be divided equally between the plaintiff and the defendant."

---

\* Chief Justice when this case was argued.

Until the time of their divorce July 22, 1942, plaintiff and defendant were wife and husband. While they bore that relationship to each other they acquired, at the purchase price of $2,650, the property just mentioned and made it their home. July 21, 1942, husband and wife entered into a property settlement agreement for the division between themselves of their humble estate. The latter consisted of nothing more than the home and the household furnishings. The agreement postponed to one year after its date the physical division of the property. It granted to the plaintiff during that interval possession of the home, but said: "First party [plaintiff] agrees that the second party [defendant] may occupy one bedroom in said home rent free." The agreement cast upon the defendant the duty of maintaining all payments upon the mortgage which encumbered the property and of discharging the unpaid balance of the purchase price of the furniture. It also required him to pay for the fuel which was needed to heat the house. Another of the provisions of the contract was the following: "It is understood that neither of the parties will quarrel with or molest the other in any manner whatsoever," and then, referring to the defendant, said: "He will refrain from in any manner interfering with first party." We also find in the agreement this provision:

"If either party shall fail to carry out any of the terms, covenants or conditions of this agreement, the same may be considered at the option of the other terminated and the rights of the parties shall be such as the law provides, the same as if this agreement had never been written."

In defending himself against the partition suit, the defendant depended upon the settlement agreement from which we quoted. He contended that he had faith-

fully performed all of its covenants. The plaintiff conceded that her erstwhile spouse discharged all of the payments exacted by the agreement, but accused him of repeated violations of the anti-quarreling covenant.

The marriage of these two people did not take place until each had passed the prime of life. The beginning of their matrimonial venture was inauspicious. Their wedding march had its beginning in a matrimonial agency. As precursors to this suit the parties had not only their divorce suit, but also a petition in bankruptcy filed by the defendant and a suit instituted by him in the district court against the plaintiff.

One of the findings of fact, referring to the property settlement agreement, says: "The agreement hereinabove referred to was breached and violated by the defendant." We think that that finding was warranted. In fact, the defendant's brief admits: "There was considerable testimony to the effect that quarreling between the parties was fairly frequent." The word "quarreling" scarcely suffices to describe what actually occurred. If the plaintiff told the truth, and we believe that she did, the quarrels were accompanied by violence upon the defendant's part. He himself conceded that in one of the quarrels a chair was broken. He claims that on another occasion he destroyed a pistol with which the plaintiff, according to him, had armed herself. Referring to the testimony of his former wife that she had been required three times to summon the police, he answered, "That could be." Evidently the plaintiff had no confidence in the defendant's covenant not to quarrel, for immediately following the penning of their signatures to the agreement she began to keep notes or a diary of the stormy episodes as they followed each other in quick succession. These notes—

or shall we call them her memoirs—tell a story of profanity, irascibility and physical force upon the defendant's part. Normally, it takes two to make a quarrel, but evidently the defendant found means of accomplishing that result by himself. We think that the findings were supported by the evidence and that the defendant's breach of this covenant justified the plaintiff in electing to treat the agreement as terminated.

■ The issue in regard to quarreling was the only one that received substantial attention during the trial. Thus, since we have adopted as our own the Circuit Court's finding that the defendant himself breached the property settlement agreement, we know of no reason why a partition should not be made of the property.

■ As is seen from the decree, it provides that the net proceeds of the sale of the single item of real property which the parties possess should be divided equally between them. The property consists of a fractional lot improved with a five-room house. No one contends that partition without sale is practicable in this case. The decree, therefore, properly ordered a sale: § 9-608, O. C. L. A.

A year or more after the parties had signed the property settlement agreement the defendant began to improve and repair the property. The testimony upon that subject is scant, but it is uncontradicted. The plaintiff herself testified:

> "The improvements he made since I moved out were not necessary. He has put in about $1200 worth of concrete and he hasn't paid for only about half of that. He put this curbing in on the other people's land. The furnace he put in wasn't necessary * * *."

Other evidence indicates that before the defendant built the curbing, or wall, he had the property surveyed and placed the concrete wall upon the established line. The defendant testified:

"A. Oh, I imagine now, of course, you understand, Judge, since the divorce I spent probably—or rather since she moved out of the house I spent over $7,000 in improvements; but right now I don't think I could get more than $8500 even at that, maybe $9,000.

"The Court: You say you spent $7,000 on improvements since 1944?

"A. Since 1940 I—

"The Court: She moved out in 1944. You say you spent $7,000 in improvements?

"A. Yes.

"The Court: What did you do to improve it?

"A. Well, I put in new sidewalks, rewired the whole house, put in an electric furnace, new roof, new porch, and that all amounted to big money.

"The Court: Have you a record of your payments?

"A. It is all paid except a little on the contract.

"The Court: Have you a record of the receipts and everything else to show the amount paid?

"A. Yes, I have the receipts.

"The Court: You say the present market value is about $8500?

"A. That is what I was offered but up to that time property was still way down.

"The Court: Well, you paid $2,650 for it in 1938?

"A. Yes, 1939 I guess it was.

"The Court: 1939, and you say you spent $7,000 since that time and now you could only get $8500 for it?

"A. Around about that."

At the close of the case the parties, through their counsel, stipulated that the defendant

"would testify if called in rebuttal that he was mistaken as to his testimony concerning the value of the property in question wherein he testified that he had been offered $8500; that he intended to say that he had been offered $3500 and had refused the offer, stating in his refusal that he had over $8500 invested in the property."

Uncontradicted evidence shows that while the defendant was making the improvements the plaintiff noticed what he was doing and, far from objecting, told her friends that when he had completed his work she would institute the suit now before us. Although the agreement was signed July 21, 1942, this suit was not filed until May 1, 1947. In the meantime, if the defendant told the truth, he spent about $7,000 in repairing and improving the property.

Generally, when a co-tenant, in good faith, makes substantial improvements to property which enhances its value, equity finds a way of giving him the benefit of the improvements. The methods available to equity of making the adjustment are several. In view of the scant information before us about the improvements, we need not discuss the methods. Our statute authorizes the adjustment: § 9-640, O.C.L.A.; and see *Thompson Estate Co. v. Kamm*, 107 Or. 61, 213 P. 417, 28 A.L.R. 722. The subject is discussed in 40 Am. Jur., Partition, page 32, § 39, and 68 C.J.S., Partition, page 220, § 139.

We believe that in the division of the proceeds of the sale, an adjustment should be made on account of the improvements installed by the defendant, if they were in fact desirable, substantial and increased the market value of the property. If they were of the re-

quired kind, the defendant, and not the plaintiff, should receive the benefit. We are compelled to state the situation in general language because we lack specific information. In recent years the market value of virtually all property has materially increased, and that fact may account for the circumstance that the value of the property owned by these parties enhanced. The defendant, as we have seen from his quoted testimony, said that he has records showing the amount which he spent upon the property. Upon a rehearing in the Circuit Court, the chancellor may wish to peruse those documents. The cause will be remanded to that court so that after an inquiry as to the nature of the improvements and their effect, if any, upon value, the court may revise its decree with an adjustment provision if the circumstances warrant one.

Reversed and remanded.