Argued March 9, affirmed March 23, petition for rehearing denied
April 26, 1960

## HYBERTSEN ET AL v. OLDRIGHT
350 P. 2d 419

Argued and submitted March 9, 1960.

*Jack L. Kennedy* argued the cause for appellants.

On the briefs were Krause, Lindsay & Kennedy and Alan H. Johansen, Portland.

*S. M. Suwol,* Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Warner, Sloan and Duncan, Justices.

DUNCAN, J. (Pro Tempore)

Appeal from a decree in equity of the circuit court of Multnomah county denying plaintiffs' claim that defendant held property in trust for the estate of Leo L. Oldright, deceased. Said deceased for convenience is hereinafter referred to by the name Leo. Plaintiff Hybertsen is administrator of the estate of Leo, and plaintiffs William, Robert, and George Oldright and Joy Steurernagel are the children of Leo. Defendant Emmy M. Oldright is the widow of Leo.

Leo and defendant intermarried in 1931 and lived together until his death on March 17, 1949. Leo left a will dated June 3, 1940, which was entered in probate September 20, 1955, with said Hybertsen as ad-

ministrator with will annexed. The will purported to give certain modest bequests to said defendant and the said children and then recited: "The balance of my estate consisting of any funds in the United States Bank of Portland, Ore. or any bank or from liquidated real estate which I might possess, I give and bequeath to my wife Emmy M. Oldright and my four children, William, Robert, George and Joy, to be distributed equally, share and share alike."

The complaint describes five tracts of real property and alleges "* * * that the purchase price of said real property was advanced and paid for by said Leo L. Oldright and record title to said real property was placed in the name of the defendant solely for business purposes and to facilitate the ultimate sale of said real property." Plaintiffs prayed for a decree requiring defendant to deliver over certain personal property to and to convey to the estate the real property in her name and to account for rents and profits and for the proceeds of real property sold by her after Leo's death. In her amended answer defendant pleaded laches on the part of plaintiffs, but this defense seems to have been abandoned on appeal. Nevertheless, it is held that the suit was not barred by laches.

 Basically, when one makes payment for property and takes the title in another's name or where one, with the consent of another, purchases property with the money of such other and takes the title in his own name, there arises by operation of law a resulting trust in favor of him whose money paid for it. However, as between spouses under like circumstances there is a presumption that a gift or advancement to the other spouse was intended. This presumption can only be overcome by clear and convincing evidence that it was the mutual understanding and intention of the

spouses that the title was taken in trust only. *Neppach v. Norval et al.*, 116 Or 593, 240 P 883, 242 P 605; and *Holohan et al. v. McCarty et al.*, 130 Or 577, 281 P 178. In the Neppach case plaintiff was the surviving husband. The property involved was placed in the wife's name, and she left a will devising the property to a person other than plaintiff. The evidence conclusively established that the husband paid for the property and improved it over the years altogether with his own funds, and that his wife, who put nothing into the property, told disinterested parties that it was her husband's property. This evidence was found sufficient to overcome the presumption of a gift and to establish a resulting trust in plaintiff's favor.

In the present case it is necessary to look to the evidence to determine if there is clearly established an understanding between and an intention on the part of Leo and the defendant that the title to the property was placed in defendant's name as trustee for Leo.

Leo was a schoolteacher receiving a modest salary. Under a judgment for support of children of a former marriage he was required to and did pay $60 per month. Defendant worked for a year following the marriage. From about 1932 to 1935 and probably longer, she was unemployed, and during part of that time she and Leo lived with her mother, and both were studying for educational degrees. In 1943 she became a real estate saleswoman and in 1945 became a broker in her own right and continued in the real estate business.

Plaintiffs contend that Leo had the property placed in defendant's name to avoid the inconvenience of making transfer of title resulting from the necessity of obtaining releases from his divorced wife because of the support judgment and to prevent knowledge of

his extracurricular activity from reaching the ears of the school board, whose policy was adverse thereto. Letters in evidence from Leo to his brother who loaned money to Leo from time to time mentioned this inconvenience in securing releases from the former wife. However, there is no evidence that the divorced wife ever refused to sign a release. Neither is there evidence of any communications, oral or written, between Leo and defendant as to any intention to establish a trust.

It appears from the evidence that defendant put some of her own personal earnings into the property dealt in, but that Leo did not put any of his personal earnings into the property.

It is clear that the bulk of the funds used in purchasing the properties and improving them came from loans and from sales of the properties. Loans were obtained from defendant's mother, from Leo's brother George, and from a bank and a loan company. Most or all the notes and mortgages evidencing and securing the loans were signed jointly by Leo and defendant. It is clear that the two worked diligently and compatibly in furthering their property dealings. The evidence is in conflict as to whether Leo or defendant handled all the building operations and procurement of loans or as to which handled most of that work. It does appear clear, however, that defendant carried on a substantial part of the operations, because Leo was steadily engaged at his teaching job during the day.

Leo had maintained a checking account in his own name in the United States National Bank since 1928. On May 19, 1948, this was changed to a joint survivorship account between him and defendant. At that time all Leo's children were over 21 years of age. Leo was

an educated man with considerable business experience, as evidenced by his construction work and financial operations. The only satisfactory conclusion from the evidence is that he intended defendant to have the money and the property. If he had not intended her to have the real property he would have arranged it otherwise.

The evidence wholly fails to establish a trust in defendant's hands in favor of Leo's estate.

■ In their brief plaintiffs suggest that on a finding that the property was acquired and improved by money from a joint or common fund that plaintiffs and defendant are equitable owners of an undivided one-half interest each. This was not the theory on which the case was tried, but in a proper case a court of equity could so declare. However, this is not deemed to be such a proper case, because the evidence fails to establish a trust in the whole or in any part of the property.

Presumably the items of personalty in possession of defendant consisting of a piano, pictures, watch, tennis equipment, shirt studs, bicycle, stick pin and college pin which she disclaimed will be delivered by her to the administrator when the mandate is filed in the circuit court. If not, such delivery may be ordered by the circuit court.

The decree is affirmed.