Argued March 2, reversed and remanded November 5, 1970

PALMER, *Appellant, v.* PROTRKA ET AL,
*Respondents.*
476 P2d 185

24

*Roger A. Nelson,* Portland, argued the cause for appellant. With him on the briefs were Thomas L. Moultrie and Reiter, Day, Wall & Bricker, Portland.

*Don S. Willner,* Portland, argued the cause for respondents. With him on the brief were Willner, Bennett & Leonard.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN,** O'CONNELL, DENECKE, HOLMAN and TONGUE, Justices.

---

\* Perry, C. J., retired June 1, 1970.
\*\* Sloan, J., resigned September 30, 1970.

O'CONNELL, C. J.

This is a suit for the partition of a parcel of land. Plaintiff appeals from a decree dismissing her complaint.

The property sought to be partitioned was sold for $17,333 and the question now presented is the respective rights of the parties to the proceeds of the sale.

On January 15, 1960, the title to the real property sought to be partitioned was conveyed to Robert Palmer and Elsie Palmer, husband and wife. The title vested in them as tenants by the entirety. Robert and Elsie separated in October, 1962. On August 27, 1963, Elsie was awarded a decree of limited separation. In that proceeding the trial court purported to award to Elsie the real property involved in the present suit.

On June 25, 1964, Elsie obtained from a Mexican court a decree of divorce from Robert Palmer. After the entry of the divorce decree, Elsie married George E. Protrka. Thereafter she brought a suit to quiet title to the real property awarded to her in the temporary separation proceeding. In that suit the trial court entered a decree quieting the title in Elsie Protrka. Upon appeal we reversed, holding that when the proceeding is for a temporary separation the trial court has no power to make a disposition of the real property held by the spouses. Therefore, at the time the Mexican divorce decree was entered the parties held the real property as tenants by the entirety. The tenancy by the entirety was converted into tenancy in common by the decree of divorce. The court then went on to say:

"A court hearing a suit to quiet title to land has no jurisdiction of a marriage as such, and, accordingly, it has no incidental power to divide property between cotenants, either during marriage or after

they become tenants in common by reason of a divorce. We express no opinion on the remedies, if any, which might be available to these parties under their present marital state." *Protrka v. Palmer*, 246 Or 467 at 472-473, 423 P2d 514 (1967).

On May 16, 1967, Robert Palmer conveyed all his right, title and interest in the property to Beverly Savage, the plaintiff in the present suit. On May 20, Robert Palmer and Beverly Savage were married. On May 28, 1967, Robert Palmer died. Plaintiff then brought this suit for partition. In this suit the trial court concluded that "if Robert F. Palmer was before this Court he would not be entitled to any interest in this real property as a matter of equity," and that plaintiff, as the successor of Robert Palmer had no greater rights than he would have had if he were alive.

As an alternative ground for its decision, the trial court held that Elsie Protrka was entitled to the entire proceeds from the sale of the property on the basis of a computation taking account of the amounts contributed by her in the purchase of the property and the amount Robert Palmer received under the decree of limited separation.[1]

It is apparent from the findings of fact and conclusions of law and from the colloquy between the trial judge and counsel that the partition of the proceeds

---

[1] This is set forth in the following "Conclusions of Law" made by the trial court:

"Alternatively, $5,800, the value of the property received by Robert F. Palmer under the decree of limited separation should be deducted from $8,666.55 [one half of $17,333.10, the proceeds from the sale of the property] the share, if any, of plaintiff in this real property. The sum of $20,235.79 contributed by defendant Elsie M. Protrka, to this real property should be offset against the share, if any, of plaintiff in this real property by right of contribution from a co-tenant, and these deductions and offsets far exceed the share, if any, of plaintiff in this real property."

representing the value of the real property was made by the trial court, not simply upon the basis of the respective contributions made by Robert and Elsie Palmer to the purchase and improvement of the property, but also upon the basis of the previous division of other property in the separation proceedings.[2]

The principal question upon appeal is whether it is permissible for a court in a partition suit to make an allocation of the interests of the parties upon grounds other than the contribution made by the respective

---

[2] The court relied upon the following stipulated Recapitulation showing contributions and deductions in arriving at the net contributions by Elsie Protrka:

### "RECAPITULATION

"A.  Payment by Elsie Protrka:

| | | |
|---|---|---|
| 1. Down Payment | $10,100.00 | |
| 2. Total taxes, mortgages payments and insurance | 13,965.54 | |
| 3. Total capital improvements | 2,805.67 | |
| 4. Keller & Keller, closing costs | 253.60 | |
| 5. Expenses incurred while house vacant | 98.43 | |
| Total Payments | | $27,223.24 |

"B.  Deductions:

| | | |
|---|---|---|
| 1. Reasonable rental value during period occupied by Elsie Protrka $7,175.00 | | |
| (a) Less utilities during period of sole occupancy 1,067.58 | | |
| (b) Less maintenance during period of sole occupancy 1,099.97 | | |
| | 5,007.45 | |
| 2. Mortgage payments made by first buyer | 1,980.00 | |
| Total Deductions | | 6,987.45 |
| Net Contributions by Elsie Protrka | | $20,235.79" |

parties in acquiring and maintaining the property sought to be partitioned.

There are general statements in the cases to the effect that equitable principles are to be applied in adjusting the interests of the parties to a partition suit.[3] However, there are more definitive statements indicating that in a partition suit the only relevant equities are those which arise out of the relationship of the cotenancy.[4]

■ We think that in the interest of orderly procedure a suit for partition of property should be limited to an adjustment of the interests of the parties as cotenants and that the equities of the respective parties arising out of the marital relationship are not relevant in making allocation of the interests in the property or its proceeds.[5]

----

[3] For example, in a suit for partition of jointly held property brought by a husband against his wife, the court said: " In partition, equitable principles are to be applied and if the circumstances are such that equality is not equity, the court is not bound to partition in equal shares simply because there is a joint tenancy in form." Jezo v. Jezo, 23 Wis2d 399 at 406c, 129 NW2d 195, 196 (1964).

[4] "The general rule is that in a partition decree the court may adjust all equities of the parties in the property or arising therefrom." 2 Tiffany, Real Property (3d ed, 1970 Cum Supp) § 479.1, p. 211.

"Since partition finally settles the relation existing between the cotenants, all equities growing out of the relationship are finally adjusted by the final decree." 2 American Law of Property § 6.26, p. 117 (1952).

"In a partition action, it is proper to explore fully and finally to settle, all claims by any party against any other party which can fairly be said to arise out of or to affect the common property." 4 Powell on Real Property § 611, p. 646 (1968).

[5] In support of this argument that the trial court has broad powers to consider all of the equities between the parties, defendant relies on the following language in Craig v. Maher, 158 Or 40, 44, 74 P2d 396 (1937):

(Continued on page 30)

■ Because the trial court based its decision upon all of the equitable considerations in the case, issue was not fully joined on the question of the respective claims of the parties for contributions and offsets. The cause must, therefore, be remanded to permit the parties to show the amount of the respective contributions and offsets.

■ It may be helpful to the trial court for us to comment on the evidence that was adduced. It appears from the record that Elsie Protrka made a down payment of $10,100.00 on the property. It is generally held that when the wife pays the consideration for the purchase of real property, the wife's consent to a conveyance to herself and her husband as cotenants raises a rebuttable presumption of a gift of an undivided interest in the husband.[6] Although we have found no Oregon case expressly adopting this rule, support for it can be found in at least two of our cases.[7]

■ In the absence of evidence to the contrary, the down payment made by Elsie Protrka in the present

---

(Continued from page 29)

"In justification of the trial court's action, it must be borne in mind that the right to a partition of property is not, under all circumstances, an absolute right and that, when it is inequitable to grant that relief, the court, in the exercise of a proper discretion, will be warranted in refusing the relief and may grant such relief as is equitable, if within the scope of the pleadings. For these reasons, this particular objection cannot be sustained."
We do not interpret the case as holding that the court can consider equities other than those arising out of the cotenancy.

[6] Cases are collected in Annotation, 43 ALR2d 917 (1955).

[7] In Smith v. Durkee, 121 Or 86, 90, 254 P 207 (1927) the court said "Where the wife voluntarily purchases real property, even with her own funds entirely, and takes the title in the name of herself and husband she thereby creates them tenants by the entirety." See also Hybertsen v. Oldright, 221 Or 392, 350 P2d 419 (1960).

case created a presumption of a gift to Robert Palmer of a partial interest in the property.

■ Defendant seeks reimbursement for expenditures made both before and after termination of joint occupancy. In the absence of evidence to the contrary, expenditures made during the period of joint occupancy are presumed to be intended as gifts of an undivided interest to the other spouse. No such presumption arises out of expenditures made after the termination of the joint occupancy.

■ Irrespective of the character of the occupancy of the cotenant, each is obliged to contribute his pro rata share towards payment of property taxes, encumbrances on the land, and necessary insurance. If one cotenant makes such payments, he is entitled to reimbursement for the amount of the expenditure by him in excess of his proportionate share.[8] Similarly, a cotenant is required to bear his proportionate share of the expense of maintaining and keeping the property in repair.[9]

■ Applying the foregoing rules, Elsie is entitled to reimbursement for one half of her expenditures for taxes, insurance and mortgage payments made after the termination of the joint occupancy.

■■ Expenditures for permanent improvements not

[8] Merit v. Losey, 194 Or 89, 240 P2d 933 (1952); King v. King, 163 Or 84, 88, 95 P2d 66 (1939); 2 Tiffany, Real Property § 460 (3d ed 1939).

[9] Carnes v. Dalton, 56 Or 596, 603, 110 P2d 170, 174 (1910). See also 4 Thompson, Real Property, 179-80 (1961); 2 Tiffany, Real Property p. 282, n. 93 (1939). The rule is elsewhere qualified by requiring, in the absence of an emergency, that the tenant make a demand on the other tenants before making the repairs. Restatement, Restitution § 105 (1937). But see Moss v. Rose, 27 Or 595, 600, 41 P 666 (1895); 2 Tiffany, Real Property, p. 282, n. 93 (1939).

necessary to preserve the property are governed by other principles. A cotenant is not obligated to improve his property. Therefore, contribution for permanent improvement will be required only when there is an expressed or implied agreement to that effect, or if there are equitable considerations justifying contribution.[⑩] If the value of the property is enhanced by the improvements, even though made without the consent of the cotenant, it is only equitable that the tenant improving the property should be credited with the amount representing the increase in value of his cotenant's interest upon a sale of the property.[⑪]

■ The defendant should be credited for one half the value of permanent improvements made after termination of the joint occupancy, insofar as they increase the sale price.

■ The defendant seeks reimbursement for expenditures for public utilities during the period of her sole occupancy. Being neither necessary repairs nor reimbursable improvements, such expenditures do not entitle her to contribution.

■ Plaintiff seeks reimbursement for one half the rental value of the property during the defendant's sole occupancy. When a husband and wife take title to residential property as cotenants, it may be assumed,

---

[⑩] If a cotenant is aware that another cotenant is making expenditures, his silence will be deemed to constitute consent and in that event he is accountable for a proportionate share of the expenditures even though it may exceed the increased value of his property interest. See Dahlhammer & Roelfs v. Schneider, 197 Or 478, 498, 252 P2d 807 (1953); Brusco v. Brusco, 241 Or 550, 553-54, 407 P2d 645 (1965).

[⑪] 4 Thompson, Real Property § 1829, p. 319 (1961). Cf., Doty v. Edmison, 251 Or 281, 445 P2d 133 (1968); Miller v. Plein, 191 Or 223, 227 P2d 823 (1951).

in the absence of evidence to the contrary, that they intend to occupy the property together. When marital difficulties make such co-occupancy impossible, it seems closest to their probable original intentions to require an equal division of the benefits of the ownership of the residence. Each should therefore be entitled to one half the rental value of the property and plaintiff should be reimbursed accordingly.[20]

The case is remanded to the trial court for the purpose of reallocating the respective interests of the parties in the proceeds of the sale of the land.

---

[20] This is consistent with the general rule that where one cotenant's use of the property in fact excludes the others from enjoyment of their interest, the occupying cotenant will be required to reimburse the others for the rental value of their interests. See 4 Powell, Real Property, pp. 608-609 (1968). Cf., Mastbaum v. Mastbaum, 126 NJ Eq 366, 9 A2d 51 (Ch 1939); McKnight v. Basilides, 19 Wash2d 391, 143 P2d 307 (1943), as clarified by Fulton v. Fulton, 57 Wash2d 331, 357 P2d 169 (1960).