Submitted May 7, 1971, affirmed February 9, 1972

DRESSLER ET UX, *Respondents, v.*
DRESSLER ET AL, *Appellants.*

493 P2d 1053

Jesse F. Dressler, Medford, filed the briefs in propria persona.

DeForest & Hansen, Medford, filed a brief for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER*, DENECKE, HOLMAN, HOWELL, TONGUE and BRYSON, Justices.

BRYSON, J.

This litigation of plaintiffs, husband and wife, against defendants, husband and wife, was commenced on February 21, 1964, when the plaintiffs filed a suit against defendants to quiet title to or determine ownership of some 300 acres of land situated in Jackson County, Oregon. The parties began acquiring the property by an agreement to purchase dated February 19, 1947, and at all times during this litigation each maintained their home on different portions of the property. The defendant J. Irene Dressler, mother of Arthur and Jesse, is not a party to this litigation.

The suit came on for trial before the late Honorable Edward C. Kelly on December 31, 1965. Judge Kelly decreed that the plaintiffs' complaint be dismissed with prejudice and further ordered that the plaintiffs, Arthur F. Dressler and Bessie Dressler, husband and wife, and Jesse F. Dressler and Gertrude R. Dressler, husband and wife, were each, as tenants by the entirety, "the owners as tenants in common, seized in fee, of an undivided one-half interest and estate in and to all of the same said real property situated in Jackson County, Oregon, and specifically described as follows:

---

* McAllister, J., did not participate in the decision of this case.

[Description omitted, but covers the approximate 300 acres of land]." It was further ordered that all of said real property be partitioned between plaintiffs and defendants and that after partition "said plaintiffs and said defendants shall hold their respective interests as ascertained severally from each other and *not as tenants in common.*" (Emphasis supplied.) The court further ordered the appointment of three referees to partition the property and appraise and set forth the values of the respective portions of the property partitioned, and further ordered that all parties file supplemental pleadings setting forth their contentions. New pleadings were filed on the partition proceeding, the referees were appointed, and their report was rendered and filed with the court.

On April 6, 1967, Judge Kelly signed an order making findings as follows:

> "* * * On February 21, 1967 the Court held a hearing to consider the objections filed * * * to the report of the referees, * * *. The Court at that time heard all of the testimony of the respective parties on said objections.
>
> "* * * * * *
>
> "* * * The Court finds that said objecting defendants fail to overcome the presumption of the regularity and fairness attached to the findings and decisions of the referees and said objections * * * be overruled [and the report of the referees] should be approved."

On the same date, April 6, 1967, Judge Kelly signed an "Order Confirming Referee's Report" which decreed "that the said report of said referees and the proceedings and partition be, and the same are, approved and confirmed, and that said parties hold in severalty the shares assigned and set off to each of

said parties respectively by the referees aforesaid as provided in said decree of December 31, 1965, that said referees cause the share so assigned and set off to [plaintiffs], and the share assigned and set off to [defendants], to be described by a metes and bounds description and that thereafter a decree be entered herein, that title to the shares assigned and set off to each of said parties respectively as aforesaid be vested in said parties respectively according to said assignment to be effectual forever."

Metes and bounds descriptions were obtained in accordance with the court's order of April 6, 1967. On January 24, 1968, Judge Kelly signed an interlocutory decree which provided:

"* * * that said report of said referees in partition be and the same is hereby in all respects confirmed and that the partition made be effectual forever; that all of the real property mentioned and described in said report and in the interim decree heretofore made and entered * * * is hereby partitioned * * * [There followed metes and bounds descriptions of Tracts #1 and #2 to plaintiffs and Parcels #1 and #2 to defendants]."

After each metes and bounds description conveying to plaintiffs and defendants, the decree contained the following language:

"be and the same is hereby allotted, assigned and set over to the [plaintiffs or defendants], in fee simple, and that the said [plaintiffs or defendants] hold the same severally and absolutely free from any and all claims, interest, possession * * *."

However, the interlocutory decree further provided:

"It is further ORDERED, ADJUDGED AND DECREED that the realty thus allotted, assigned

and set over to each of said parties as hereinabove provided shall be subject to:

"1. Their proportionate share of the expenses of this proceeding in partition as provided by law.

"2. Liens of the parties hereto, if any, the amount thereof to be determined and satisfied as set forth in said decree of December 31, 1965."

The decree of December 31, 1965, provided, inter alia:

"(4) All liens, if any, of the plaintiffs and defendants together with costs of partition to the extent provided by law, shall be satisfied by sale of said real property after partition thereof, said sales to be conducted in the manner prescribed by law for the sale of real property on execution."

The court had further ordered pleadings prepared by both sides on the question of the accounting between plaintiffs and defendants. This accounting proceeding was heard by Judge Kelly, and shortly thereafter he met his death.

The attorneys for plaintiffs and defendants stipulated:

"1. That the parties waive the right to retrial of the accounting suit.
"2. That the transcript of the previous accounting trial, dated May 16, 1967, may be received as evidence before the Court, together with all exhibits heretofore received as evidence in this matter."

On December 24, 1969, the trial court entered a final decree allowing expenses of the referees, surveyor, and respective attorneys, and awarded judgment in favor of plaintiffs and against the defendants in the sum of $19,830.57, together with interest. At

this point the defendants proceeded in propria persona and attempted to appeal from the final decree of December 24, 1969, but for various reasons failed to perfect the defendants' appeal, and this court, on May 27, 1970, issued its mandate dismissing the appeal. The mandate was filed by the county clerk of Jackson county on June 10, 1970.

On June 23, 1970, based on the decree of December 24, 1969, the plaintiff caused a writ of execution to be issued by the county clerk of Jackson county, commanding the sheriff to satisfy plaintiffs' judgment and decree "by levying upon and selling in the manner provided by the law for the sale of real property under execution, all of the right, title and interest of the judgment debtors herein [Jesse F. Dressler and Gertrude R. Dressler] as shown by said judgment and decree in and to said real property described in said judgment and decree * * *." This levy was made on property of the defendants which was set aside to them by the decree of January 24, 1968. On July 29, 1970, the defendants filed their Notice of Homestead Exemption setting forth certain property described in parcel #1 and parcel #2, alleging that "the value of said homestead is estimated to be $7,500." Objections to the claim and Notice of Homestead Exemption of the defendants were filed by the plaintiffs on July 30, 1970. The sheriff proceeded to sell all of the real property, including that described in the defendants' Notice of Homestead Exemption, and to make a return of sale in accordance therewith.

The defendants filed "Judgment Debtor's Objections to Return of Execution Pursuant to ORS 23.490." Thereafter, the plaintiffs moved the court for an order confirming the sale of the real property and for an

order denying the claim of homestead asserted by the defendants Jesse F. Dressler and Gertrude R. Dressler, and for an order overruling the judgment debtor's objections to the return of execution.

On September 23, 1970, the court signed an order sustaining plaintiffs' objections to the defendants' claim and Notice of Homestead Exemption, and cancelled, annulled, and held the same for naught, and further ordered "the sale of the above described real property, made on execution proceedings herein on July 30, 1970, shall be, and the same hereby is, confirmed free and clear of the claimed homestead rights of the defendants Jesse F. Dressler and Gertrude R. Dressler."

The above is a long, but abbreviated, statement of the background of this litigation, but it is necessary in order to place the present issues in their proper perspective.

On September 30, 1970, defendants filed and served on plaintiffs their notice of appeal "from that certain order confirming sale, denying homestead claim and overruling debtor's objections, which order is a final order affecting a substantial right * * *."

Defendants' Designation of Record and Statement of Points provides:

"* * * [D]efendants * * * do hereby designate all exhibits of the trial to be included in the record in addition to the trial court file.

"The points on which defendants intend to rely on appeal are as follows:

"(1) The trial court erred in denying defendants' homestead claim.

"(2) The trial court erred in overruling de-

fendants' objection to the sheriff's sale of defendants' property upon execution.

"(3) The trial court erred in confirming the sale upon execution of defendants' property.

"* * * * *."

This case was submitted on the briefs without argument, and the defendants have prepared their brief in propria persona. The brief filed by the defendants is of little assistance to this court.

The defendants' assignment of error raises a question as to whether or not defendants are entitled to homestead exemption. The Oregon homestead exemption law was entirely unknown at common law. It is of statutory origin. ORS 23.240 provides:

"Exemption of homestead or proceeds thereof; duration of exemption. (1) A homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of $7,500, except as otherwise provided by law. The homestead must be the actual abode of and occupied by the owner, his spouse, parent or child, but such exemption shall not be impaired by:

"* * * * *

"(c) The sale of the property.

"(2) The exemption shall extend to the proceeds derived from such sale to an amount not exceeding $7,500 held, with the intention to procure another homestead therewith, for a period not exceeding one year.

"* * * * *."

ORS 23.250 provides that when the property claimed as exempt is not within a city, it shall not exceed 160 acres nor the value of $7,500.

ORS 23.260 provides that the homestead exemption is inapplicable and does not apply to mechanics'

liens for work, labor or material done or furnished exclusively for the improvement of the property claimed as a homestead, and to purchase money liens and mortgages lawfully executed.

"* * * Since there is no uniformity in the statutes of the different states, little aid is derived from studying the decisions in the other jurisdictions. It is therefore thought that the best method by which the principles of the homestead law can be ascertained and understood is through the study of the Oregon statutes and decisions * * *." Marshall, Homestead Exemption—Oregon Law, 20 Or L Rev 328 (1941).

In its original form, the Oregon homestead exemption law followed that of the state of Wisconsin. *See* Lacy, Homestead Exemption—Oregon Law a Postscript, 34 Or L Rev (1954).

The plaintiffs cite a number of cases in which the right of homestead exemption has been denied, and rely mainly on *Cole et al v. Coons*, 161 Kan 332, 167 P2d 295 (1946), for the proposition that a tenant in common cannot claim a homestead where it would work an injustice against another cotenant. *Citing also Sayers v. Pyland*, 139 Tex 57, 161 SW2d 769 (1942). For cases on this question, *see* 140 ALR 1170, 1172. Cf. *Marvin & Co. v. Piazza*, 129 Or 128, 276 P 680 (1929).

However, regardless of this contention, we conclude that the original plan of the trial court was to divide the property between the parties and to adjust any inequities by a judgment of one party against the other.

The interlocutory decree of December 31, 1965, that finally partitioned the property by metes and bounds description provided that "[a]ll liens, * * *

of the plaintiffs and defendants together with costs of partition to the extent provided by law, shall be satisfied by sale of said real property *after partition thereof*, said sales to be conducted in the manner prescribed by law for the sale of real property on execution." (Emphasis supplied.) Although the suit included several decrees, they were all part of the partition proceeding.

The interlocutory decree of January 24, 1968, also provided "* * * the realty thus allotted, assigned and set over to each of said parties * * * shall be subject to: * * * [l]iens of the parties hereto, if any, the amount thereof to be determined and satisfied as set forth in said decree of December 31, 1965."

■■ ORS 105.245 requires the trial court to appoint referees to determine the physical division of the property after the court has made the initial decision that a partition be made. The trial court has the discretion in equity to allow an accounting in a partition proceeding and to appoint referees for this purpose.⊙ There is no requirement that the physical division of the property and the accounting be determined in one proceeding. Therefore, the trial court properly exercised its discretion in directing the referees to make separate findings with respect to the physical division of the property and leaving to the court the task of adjusting any inequities between the parties by a judgment lien, the payment of referees, surveyor, attorney fees, and costs of suit by an accounting and judgment.

There is nothing in the record to support a conclusion that the accounting was regarded by either the court or counsel as a separate proceeding distinct from

---

⊙ Miller v. Plein, 191 Or 223, 229, 227 P2d 823 (1951).

the partition. The actual physical partition of the property and the accounting were treated as two aspects of a single proceeding adjusting the respective interests of the parties. No contention was made at trial or on appeal that the accounting included items not pertaining to the partition.

In this case the partition proceeding was not completed, although the land was set aside to each in separate parcels, until the final decree and judgment from the accounting portion of the partition proceeding was entered.

Affirmed.