Argued and submitted November 15, 1985, affirmed as to intervenor, otherwise
reversed and remanded July 23, reconsideration denied October 3, petition for
review denied October 21, 1986 (302 Or 158)

# UNITED BANK OF DENVER,
*Respondent,*

*v.*

# GARDOS,
*Appellant,*

# KERIVAN,
*Intervenor-Appellant.*

## (82-455-E; CA A34225)

722 P2d 1261

Raymond J. Salisbury, Grants Pass, argued the cause for appellants. With him on the briefs were Steven P. Medley and Schultz, Salisbury, Cauble & Medley, Grants Pass.

Donald H. Coulter, Grants Pass, argued the cause for respondent. With him on the brief was Myrick, Coulter, Seagraves, Myrick & Adams, Grants Pass.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

In February, 1980, defendant Karin Gardos and Robert Kerivan, husband of intervenor Lotte Kerivan, purchased unimproved real property in Josephine County. The Kerivans were residents of California. In November, 1980, plaintiff was awarded a judgment against Robert in Colorado. In July, 1981, Robert conveyed his interest in the Josephine County property to intervenor. In September, plaintiff's judgment was registered in Josephine County, a writ of execution issued to enforce the judgment and the sheriff levied on Robert's interest in the property. Plaintiff purchased Robert's interest at the sheriff's sale for $51,250 in January, 1982. When the time for redemption had passed, plaintiff received a sheriff's deed to Robert's interest. After plaintiff had purchased Robert's interest and before the redemption period had run, plaintiff filed an action to set aside the deed from Robert to intervenor as a fraudulent conveyance. In March, 1983, a decree was entered setting the deed aside.

Plaintiff then brought this action to partition the real property or, alternatively, to sell it and for an accounting. Intervenor claimed an ownership interest in the property on the basis that California community property in which she had an interest had been used to purchase the real property. A partition judgment was entered dismissing all of intervenor's affirmative defenses and counterclaims and ordering a public sale of the property. Gardos and intervenor appeal.

Gardos first argues that the trial court erred in ordering repayment to plaintiff and Gardos of their respective investments in the property from the proceeds of the partition sale. The court found that Gardos' investment was $21,372 and plaintiff's was $51,250. Gardos also argues that, because plaintiff acquired its interest nearly two years after Gardos, Gardos will not receive the full increase in value of her investment in the property.

Plaintiff argues that "equity balances the positions of the parties before it and that plaintiff has been unable to realize on its judgment against Robert," that Gardos' "application for affirmative equitable relief casts upon her a duty to 'do equity'" and that the duty "may be read in terms of according plaintiff equitable treatment for the amounts it spent to acquire its interest in the property and preserve it."

Plaintiff did not allege or prove that, in its relationship with Gardos, she was guilty of misconduct which would require balancing the equities in favor of plaintiff. Asserting a legal position in order to preserve her interest in the property should not require Gardos to pay for the dispute between plaintiff and Robert. Furthermore, the Supreme Court, in *Palmer v. Protrka,* 257 Or 23, 476 P2d 185 (1970), rejected the argument that equitable principles should be applied in adjusting the interests of the parties in a partition suit.

In *Palmer,* Robert and Elsie Palmer were husband and wife, holding property as tenants by the entirety. They separated, and in a decree of limited separation the trial court purported to award the property to Elsie, who obtained a decree of divorce from Robert in Mexico 10 months later. Three years later, Robert conveyed his interest in the property to Beverly Savage four days before they married. He died a few days after the wedding. There was no consideration for the transfer to Beverly. Beverly sought a partition. The trial court concluded that, as a matter of equity, if Robert were alive and before the court, he would not be entitled to any interest. The trial court then divided the proceeds of the sale of the property by taking into consideration the property division in the earlier action between Elsie and Robert.

The Supreme Court held that equities arising from the marital relationship of Robert and Elsie were not relevant in making an allocation of the interests in the property between Beverly and Elsie. It further held that, in a partition action, a trial court should allocate the interests of the parties upon the basis of the respective contributions made by the parties in acquiring and maintaining the property. The court remanded the case to take of further evidence of the contributions of the parties, but in its discussion of the evidence that was before it the court addressed the acquisition and interests of Elsie and Robert and not those of Beverly.

We agree with Gardos that the trial court should have determined the interest of Robert at the time of the purchase by plaintiff at the execution sale. Robert owned the property as co-tenant with Gardos. Plaintiff could acquire no more than Robert's share, which is presumed to be an equal half, unless the evidence shows a larger contribution by one party

in acquiring the property. *See Palmer v. Protrka, supra.* Plaintiff's counsel acknowledged that the interest acquired by plaintiff here was an undivided one-half:

> "The present suit is to partition * * * between Miss Gardos, the undivided one-half interest owner, and the bank, who now stands in the shoes of Kerivan, having obtained Kerivan's undivided one-half interest when the suit to set aside from [the intervenor] was made."

There was no evidence that Robert contributed more than Gardos in acquiring the property. Without such evidence the trial court erred in awarding plaintiff more than Gardos for sums paid toward acquiring the property.[1]

■　　　Gardos next claims that the court erred in requiring a public instead of a private sale of the property. There was no error. A trial court does not have the authority to order a private sale when there is no evidence of great prejudice. ORS 105.205; ORS 105.210; *Fike v. Sharer,* 280 Or 577, 583, 571 P2d 1252 (1977). Plaintiff's evidence does not show that a public sale will result in such prejudice. In *Doan v. Doan,* 208 Or 508, 302 P2d 565 (1956), the Supreme Court ordered a private sale when the defendant lived on the property and used the residence as a boarding house to produce income. Here, the residence is not Gardos' permanent home, nor has the vineyard on the property produced income. Gardos' future plans to move to the property and her hopes that the vineyard will prove profitable within two years do not establish the need for a private sale.

■　　　Gardos next assigns as error the finding by the trial court that plaintiff was entitled to payment of one-half of the reasonable rental value of the property from April, 1982, out of the proceeds of the sale. Plaintiff does not dispute the general rule that

> "At common law and under the great majority of modern cases, one or more of several tenants in common may occupy realty without incurring liability for payment of rent for use and occupation so long as they do not exclude other cotenants from the exercise of similar rights." *Hanns v. Hanns,* 246 Or

---

[1] The court also erred in ordering reimbursement in full for payments made to preserve and improve the property. Each co-tenant is obliged to contribute a prorata share and is entitled to reimbursement for expenditures in excess of that share. *See Palmer v. Protrka, supra,* 257 Or at 31.

282, 310, 423 P2d 499 (1967); *see also* 4 Thompson, *Real Property,* § 1829 (1979).

The policy behind the rule is stated by 4A Powell, *Law of Real Property,* § 603 (1982):

> " '[U]nity of possession' is the characteristic attribute of a tenancy in common. In the absence of special facts the possession by one cotenant is deemed a possession by all cotenants. * * * It is a corollary of this basic generalization that one cotenant is privileged to use and to enjoy the whole property in the same manner as if he were the sole owner thereof, provided only that his behavior does not bar other cotenants seeking to share the benefits * * *. A tenant in common occupying the whole is normally held not liable to his cotenants for the value of its use and occupation, or for the economic benefits so obtained." (Footnotes omitted.)

Plaintiff argues that here there *are* special facts which, in equity, require Gardos to pay for the use of the land and which further excuse plaintiff from having to have made any demand for equal access or possession. We do not agree. The evidence does not show that Gardos received a benefit from her use of the property which equity would require her to share with plaintiff.

Plaintiff's position is again premised on the argument that, because plaintiff has a longstanding and hostile dispute with the Kerivans, that dispute should be imputed to Gardos. Again, there has been no allegation or evidence that Gardos engaged in misconduct in the co-tenancy with plaintiff. There is no evidence that Gardos received any unfair advantage from the vineyard on the property or from the use of the property by the Kerivans or any other third party. Whatever hostilities exist between plaintiff and the Kerivans, Gardos did not deny access to the property to any of plaintiff's representatives.[2] She received no notice from plaintiff that her continued use would be considered hostile. Without a showing that Gardos in some way profited to the detriment of plaintiff, she should not be required to pay for her use of the property.

We turn finally to intervenor's assignments of error, all of which relate to the trial court's finding that her claims

---

[2] Plaintiff's appraiser was denied access to the property in 1981 before plaintiff had purchased any interest in the property. There was no evidence of ouster of plaintiff by Gardos during the co-tenancy.

were barred by collateral estoppel. As noted earlier, plaintiff had previously brought a fraudulent conveyance claim against Robert and intervenor to set aside the transfer of his interest in the property to intervenor. Plaintiff's prayer was for a decree

"1.   Declaring said conveyance from Robert E. Kerivan to Lottie Kerivan null and void; and

"2.   Declaring that said described real property belongs to defendant Robert E. Kerivan; and

"3.   Declaring that plaintiff's judgment is a first lien on said real property; and that said lien be foreclosed * * *."[3]

Intervenor argued that she had an ownership interest because California community property had been used to purchase the land. Intervenor did not raise this argument as a separate affirmative defense but presented evidence and made the argument in a post-trial memorandum. The court made the following findings:

"1.   The deed of July 23, 1981, from Robert E. Kerivan to Lottie Kerivan was executed for the sole purpose of avoiding plaintiff's sister state judgment.

"2.   The real property, with improvements, was purchased by Robert E. Kerivan with Lottie Kerivan acting as little more than paying agent; therefore,

"The Court finds in favor of plaintiff, United Bank of Denver, and declares that the conveyance from Robert E. Kerivan to Lottie Kerivan, dated July 23, 1981, to be null and void. I have intentionally declined any action of [sic] Paragraphs 2 or 3 of plaintiff's prayer. In addition, I feel arguments raised by defendants' Post Trial Memorandum to be properly raised in the foreclosure suit."[4]

A decree was entered stating:

"1.   The deed dated July 23, 1981, from ROBERT E. KERIVAN to LOTTIE KERIVAN was executed for the sole purpose of avoiding plaintiff's sister state judgment, and,

"2.   The real property * * * was purchased by ROBERT E. KERIVAN with LOTTIE KERIVAN acting as paying agent * * *."

---

[3] Intervenor's name was spelled differently in the two actions.

[4] It is unclear what the trial court was referring to as a "foreclosure suit." The record does not show that a foreclosure action was instituted between the parties.

Robert and Lotte Kerivan appealed and, among other issues, assigned as error (1) that the trial court refused to determine the respective ownerships in the property and (2) that the trial court erred in failing to credit Lotte Kerivan for her expenditures. We affirmed without opinion. *United Bank of Denver v. Kerivan,* 66 Or App 752, 675 P2d 519 (1984).

Under those facts, intervenor is barred from raising her ownership interest, if any, in this proceeding by res judicata, not by the doctrine of collateral estoppel:[5]

"[I]f the subsequent proceeding be between the same parties, or their privies, and is based upon the same claim or cause of suit as that in the prior case, the judgment in the first suit is not only a bar as to all matters actually determined therein, but also as to every other matter the parties might have litigated and had decided as incident to or essentially connected therewith, *either as a matter of claim or defense."* *Wagner v. Savage, As Adm'r,* 195 Or 128, 147, 244 P2d 161 (1952). (Emphasis supplied.)

Intervenor argues, however, that part of her claim has been preserved for subsequent litigation, because any decision regarding it was expressly omitted in the first degree. *See Rennie v. Freeway Transport,* 294 Or 319, 330, 656 P2d 919 (1982). We disagree.

The trial court did not expressly reserve any claim made by intervenor. He declined to determine plaintiff's claim that the property belonged to Robert. Intervenor sought to have the refusal to address her claim overturned on appeal and, on *de novo* review, we found no error in the court's decision. The prior judgment has effected a merger or bar of all of intervenor's claims. *See Rennie v. Freeway Transport, supra,* 294 Or at 324.

Affirmed as to intervenor; otherwise reversed and remanded.

---

[5] Plaintiff raised res judicata as an affirmative defense to intervenor's claims.